Cheryl WIESENBERG, Plaintiff,

v.

**BOARD OF EDUCATION OF SALT LAKE CITY SCHOOL DISTRICT, et al., Defendants.**

No. 2:99–CV–314C.

United States District Court,
D. Utah,
Central Division.

Jan. 24, 2002.

Craig G. Adamson, Dart Adamson & Donovan, Salt Lake City, UT, Robert B. Denton, Disability Law Center, Salt Lake City, UT, Cameron S. Denning, Hanks Rooker & Denning, Salt Lake City, UT, for Cheryl Wiesenberg.

Jill N. Parrish, U.S. Attorney's Office Washington, DC, Daniel S. Gordon, U.S. Sept. of Justice, Educational Opportunities Section, Washington, DC, for U.S.

Scott D. Cheney, Peggy E. Stone, Utah Atty. General's Office Litigation Unit, Salt Lake City, UT, for Board of Educ. of Salt Lake City School Dist., Utah State office of Educ., Carol Lubomudrov, Millie Fletcher, Dorothy Cosgrove, Doloros Riley, Darlene Robles, Tom Burchett, Ken Powell, Greg Steed, Cindy Seidel, Mae Taylor–Sweeten, Ginger Rhode, Linda Davis, Richard Gomez, Janet McEntee, Steven O. Laing.

## ORDER

CAMPBELL, District Judge.

The Plaintiff Cheryl Wiesenberg ("Wiesenberg") brings suit on the behalf of her son, Matthew Morales ("Matthew"), against the Board of Education of Salt Lake City School District ("SLCSD"), the Utah State Office of Education, the Utah State Board of Education, and various officials of these bodies in their official and individual capacities (unless otherwise noted, all will be referred to collectively as "Defendants"). Wiesenberg's amended complaint asserts claims under (1) the Individuals with Disabilities Act ("IDEA"), (2) section 504 of the Rehabilitation Act, (3) 42 U.S.C. § 1981, (4) 42 U.S.C. § 1983, (5) 42 U.S.C. § 1988 and (6) failure to provide State Educational and Occupational Plans. In an order dated March 19, 2001, however, the court granted in part

Defendants' motion to dismiss as to Wiesenberg's 42 U.S.C. § 1981, 42 U.S.C. § 1983, and state law claims against the individual defendants acting in their official capacity, the Board of Education of Salt Lake City School District, the Utah State Office of Education, and the Utah State Board of Education.

Defendants now move the court for partial summary judgement on Wiesenberg's IDEA claims arising from judicial review of the Due Process Hearing and subsequent State Education Agency ("SEA") panel review. For the reasons set forth below, the court denies Defendants' motion for partial summary judgment.

## CONCLUSIONS OF LAW

### Standard of Review

The Defendants move this court for partial summary judgment. Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating that there is an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In applying this standard, the court must construe all facts and reasonable inferences therefrom in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Pueblo of Santa Ana v. Kelly*, 104 F.3d 1546, 1552 (10th Cir. 1997).

Once the moving party has carried its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 56(e)); *see also Gonzales v. Millers Cas. Ins. Co.*, 923 F.2d 1417, 1419 (10th Cir.1991). The non-moving party must set forth specific facts showing a genuine issue for trial; mere allegations and references to the pleadings will not suffice. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The judicial review of IDEA cases "differs substantially from judicial review of other agency actions, in which courts generally are confined to the administrative record and are held to a highly deferential standard of review." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471 (9th Cir.1993), *cert. denied*, 513 U.S. 825, 115 S.Ct. 90, 130 L.Ed.2d 41 (1994). The IDEA specifically requires a district court to "receive the records of the administrative proceedings, ... hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence," grant any appropriate relief. 20 U.S.C. § 1415(e)(2). As such, a district court "does not use the substantial evidence standard typically applied in the review of administrative agency decisions, but instead must decide independently whether the requirements of the IDEA are met." *Murray v. Montrose County Sch. Dist.*, 51 F.3d 921, 927 (10th Cir.1995). Yet, under this standard, courts cannot simply disregard the administrative decision; rather, each court must give the decision "due weight." *Board of Educ. v. Rowley*, 458 U.S. 176, 205–06, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982); *see also Fuhrmann v. East Hanover Bd. of Educ.*, 993 F.2d 1031, 1034 (3d Cir.1993). The

Tenth Circuit has not defined "due weight,"[1] but it cannot mean that the district court is free to simply adopt the state administrative findings without an independent re-examination of the evidence. *Murray*, 51 F.3d at 927; *see also Doe v. Metropolitan Nashville Public Schools*, 133 F.3d 384, 387 (6th Cir.1998). Nor can "due weight" mean that the district court is free to substitute its own notions of sound education policy for those of the educational agencies it reviews. *Rowley*, 458 U.S. at 205, 102 S.Ct. 3034. This has been described as a "modified de novo review," or as "involved oversight." *Murray*, 51 F.3d at 927; *see also Town of Burlington v. Dep't of Educ.*, 736 F.2d 773, 791–92 (1st Cir.1984), *aff'd on other grounds*, 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985).

The "modified de novo review" stance of a court in an IDEA review is generally unsuited to summary judgment, because "[u]nless the re-examination revealed that no material facts were in dispute, the district court would then have to weigh the evidence, which is never appropriate at the summary judgment stage." *Doe*, 133 F.3d at 387 n. 2 (citing *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505); *but see Capistrano Unified Sch. Dist. v. Wartenberg*, 59 F.3d 884, 891–92 (9th Cir.1995) (noting that a summary judgment motion in federal court arising from an IDEA review "does not fit well into any pigeonhole of the Federal Rules of Civil Procedure"). Accordingly, summary judgment is not frequently granted in IDEA cases, although there is no prohibition against it. *Murray*, 51 F.3d at 927 n. 12. Here, there are material factual issues in dispute and therefore, summary judgment is inappropriate except as regards one claim, as discussed in greater detail below.

*Discussion*

Wiesenberg contends that by failing to evaluate Matthew in his sixth grade year, the Defendants violated their duty to "find" Matthew and that by failing to provide Matthew specific services, the Defendants failed to provide Matthew a free appropriate public education ("FAPE") pursuant to the IDEA. Defendants assert that as a matter of law SLCSD met its child-find obligation and provided FAPE as required by the IDEA.

A. Child–Find Obligation

■ "All children with disabilities . . ., regardless of the severity of their disabilities, and who are in need of special education and related services, are [to be] identified, located, and evaluated." 20 U.S.C. § 1412(a)(3)(A). This is the so-called child-find obligation, which imposes an affirmative obligation on the school district. *Clay T. v. Walt County Central United Sch. Dist.*, 25 IDELR 409 (M.D.Ga.

1. While the Tenth Circuit has not defined "due weight," the First, Fourth, and Eight Circuits have attempted to further describe this amorphous standard. In *Fort Zumwalt Sch. Dist. v. Clynes*, the Eight Circuit found the weight due is less than that under the "substantial evidence" test, but directed that a court should consider the state hearing panel's expertise and opportunity to observe demeanor evidence. 119 F.3d 607, 610 (8th Cir.1997). In *Hartmann v. Loudoun County Bd. of Educ.*, the Fourth Circuit determined that "[a]dministrative findings in an IDEA case are entitled to be considered prima facie correct, and the district court, if it is not going to follow them, is required to explain why it does not." 118 F.3d 996, 1000–01 (4th Cir.1997) (citations omitted). In *Roland M. v. Concord Sch. Comm*, the First Circuit found that a "court must render . . . a bounded, independent decision[ ]—bounded by the administrative record and additional evidence, and independent by virtue of being based on a preponderance of the evidence before the court." 910 F.2d 983, 989–90 (1st Cir.1990), *cert. denied*, 499 U.S. 912, 111 S.Ct. 1122, 113 L.Ed.2d 230 (1991).

1997). The duty "is triggered when the [school] has reason to suspect a disability, and reason to suspect that special education services may be needed to address that disability." *Dep't of Educ., State of Hawaii v. Cari Rae S.*, 158 F.Supp.2d 1190, 1194 (D.Haw.2001) (citations omitted); *cf. W.B. v. Matula*, 67 F.3d 484, 501 (3d Cir.1995) (holding that the child-find duty requires children to be identified and evaluated "within a reasonable time after school officials are on notice of behavior that is likely to indicate a disability"). Knowledge of a disability may be inferred from written parental concern, the behavior or performance of the child, teacher concern, or a parental request for an evaluation. *See* 20 U.S.C. § 1415(k)(8)(B)(i-iv). The child-find obligation is in no way absolute.

■ Wiesenberg argues only that SLCSD failed to meet its child-find obligation with respect to Matthew as an individual and does not allege that SLCSD's procedures themselves are defective. To support her claims, Wiesenberg cites hundreds of pages of evidence, including expert testimony, documentary evidence, and trial transcripts. Specifically, Wiesenberg contends that two facts gave the SLCSD staff reason to suspect a disability and reason to suspect special educational services were needed to address that disability: (1) Matthew's California education records and (2) verbal communication with SLCSD staff about Matthew's special education program in California.

The parties do not dispute Matthew's educational history from kindergarten to third grade. During kindergarten, Matthew was referred for speech therapy evaluation. In November of 1988, an individualized educational plan ("IEP") was created for Matthew that called for weekly speech therapy, which continued through the first and into the second grade. (Dist. Ex. Vol. I at 4, 6) In December of 1991 and throughout his third grade year, Matthew had an IEP for adapted physical education with goals for improving visual motor coordination and balance. (Dist. Ex. Vol. I at 12).

Matthew's California educational records also include teacher comments. His kindergarten teacher Mrs. Noel opined that "some of the paper-pencil tasks are very challenging for him." (Dist. Ex. Vol. I at 2). In second grade, Mrs. Chin reported that "[Matthew] has a hard time completing his work on time" but found by the end of the year that "Matt is using his time more effectively." (Dist. Ex. Vol. I at 8). In the first report period of his second grade, Matt received poor evaluations: a "v-", a "-" in the second, and another "-" in the third report period in homework. *Id.* In the third and fourth grade, Matthew again had troubles with completing homework assignments. (Dist. Ex. Vol. I at 11, 14). Yet, throughout all this time Matthew was not a discipline problem. (Dist. Ex. Vol. I at 2, 8, 11, 14).

Based solely on this pattern of homework problems, Dr. Pickering, one of Wiesenberg's witnesses at the due process hearing, testified that "because he isn't a behavioral problem [ ] it would be a red flag to me to say there is some other reason for why this child is not being able to get his assignments completed." (Tr. at 195). Dr. Pickering also testified that Matthew's kindergarten to third grade educational records should have raised a red flag for the district to evaluate Matthew. (Tr. at 196). Another of Wiesenberg's witnesses, Dr. Johnson–Nance, also testified had the SLCSD staff merely read the school records, "it would [have] given them some indication he had problems." (Tr. at 325).

Wiesenberg also asserts that she notified the SLCSD staff and advised them of

her son's special education program in California. (Tr. at 348, 351, Par. Ex. at 117). Dr. Pickering testified that such a notification of Matthew's need for special services to the SLCSD would make her opinion that the SLCSD should have evaluated Matthew for special education stronger. (Tr. at 197). Dr. Johnson–Nance agreed and testified that "given that grandmother, the aunt, and the mother all requested services, along with the cum[ulative] file and what was in it, I believe that the problem should have been addressed." (Tr. at 325).

In response, Defendants argue that the absence of IEPs for the fourth and fifth grades could reasonably be interpreted by SLCSD as evidence that special services for Matthew were no longer required. Defendants also point to the fact that Matthew's last know IEP was not for speech or learning disabilities but rather to improve his gross motor control development, and that Matthew's academic performance from kindergarten to fifth grade was average to above-average. Moreover, Defendants argue that despite Wiesenberg's oral notifications, she never committed her objections to writing or expressly asked for an evaluation of Matthew. Clearly, there are factual issues in dispute regarding this claim.

## B. FAPE

The IDEA seeks to provide a FAPE that meets disabled children's needs. The IDEA guarantees an "appropriate . . . education in the state involved," but "generates no additional requirement that the services so provided be sufficient to maximize each child's potential commensurate with the opportunity provided other children." *Rowley*, 458 U.S. 176, 188, 198, 102 S.Ct. 3034 (1982). "The 'basic floor of opportunity' provided by the Act consists of access to specialized instruction and re-

lated services which are individually designed to provide educational benefit to the handicapped child." *Id.* at 201, 102 S.Ct. 3034. The Plaintiff asserts that the SLCSD did not provide Matthew FAPE in a number of ways. Each will be discussed in turn.

### 1. Ninth Grade IEP

The hearing officer found that SLCSD did not provide FAPE for Matthew for his ninth grade year and ordered that the SLCSD provide him with "up to 2 hours of private tutoring per week commencing one week after the filing of this decision and order and continuing through the balance of his 10th grade year (school vacation weeks included)." (IHO Dec. at 67, attached to Pleadings Vol. at Tab 5). Wiesenberg does not argue that the hearing officer was incorrect in his liability determination; rather, Wiesenberg alleges that the relief ordered was inadequate. Defendants assert that Wiesenberg may not challenge this finding of relief for Matthew's ninth grade.

Defendants cite no authority or reason why this court may not review the relief ordered by the hearing officer. The right to appeal the administrative decision extends to "any party aggrieved by the findings and decision" and "to the complaint presented pursuant to this section." 20 U.S.C. § 1415(i)(2)(A). The text of the IDEA does not limit the jurisdiction of the reviewing court to liability.

The structure of the IDEA also indicates that a district court may review the relief ordered by the hearing officer. The IDEA necessitates a program specifically designed to provide educational benefit for a particular child. *Rowley*, 458 U.S. at 201, 102 S.Ct. 3034. In reviewing these individually designed programs, a district court adopts a "modified de novo" stance and must determine for itself whether the

services provided met this minimum floor of opportunity for itself, giving due weight to the administrative decisions. This review must extend to all aspects of the hearing officer's decision, including the relief ordered.

A material question of fact remains as to whether the hearing officer ordered the correct remedy for SLCSD's violation of the IDEA.

### 2. Tenth Grade Services

Wiesenberg also alleges that Matthew's tenth grade IEP contains many of the same infirmities as Matthew's ninth grade IEP and is inadequate. Defendants counter that the tenth grade IEP is sufficient to meet Matthew's educational needs and, in the alternative, that "any deficiency in the IEP process must result in prejudice to the student or his parents before a court may find the IDEA was violated." *Logue v. Unified Sch. Dist. No. 512*, 28 IDELR 609 (10th Cir.1998) (unpublished).

At the time of the hearing officer's decision, Matthew's tenth grade IEP had not yet been implemented, so that the hearing officer candidly admitted that "[p]redicting how a child will respond to an IEP that has not yet been implemented is clearly an inexact science." (IHO Dec. at 65 attached to Pleadings Vol. at Tab 5). Moreover, the hearing officer also admitted that "the IEP is more than just a document[,][i]t is a process and not just a document that requires careful and systematic implementation and monitoring to increase the likelihood of positive outcomes." *Id.* In sum, the data was yet to be formed about the sufficiency of the tenth grade IEP at the time of the hearing officer's decision.

To prove Matthew's tenth grade IEP inadequate, Wiesenberg alleges it lacks measurable objectives and a sufficiently detailed statement of transition services ("transition services") in the IEP and does not extend far enough in scope. The lack of sufficiently objective and measurable goals could make an IEP insufficient to meet Matthew's educational needs. (IHO Dec. at 53, attached to Pleadings Vol. at Tab 5; Tr. at 328–30). Such a deficiency could prejudice Matthew, because a lack of objective goals can hinder the growth of a disabled child. *Id.* To determine whether the tenth grade IEP lacks such measurable goals, the court would need to re-weigh the evidence the hearing officer relied upon in approving the IEP.

Wiesenberg also alleges that the tenth grade IEP is inadequate because it lacks sufficient transition services. This issue is discussed at length later in this decision. Transition services serve to help a child prosper after school.

Finally, Wiesenberg objects to the general scope of Matthew's tenth grade IEP. This claim is nearly identical to her challenge of the ninth grade IEP scope. Again, there are disputed factual issues that cannot be resolved by a motion for summary judgment.

### 3. Transition Services

Wiesenberg alleges that Matthew's ninth and tenth grade IEP lacked sufficient transition services and thus failed to provide FAPE. The IDEA defines "transition services" as:

a coordinated set of activities for a student with a disability that—

(A) is designed within an outcome-oriented process, which promotes movement from school to post-school activities, including postsecondary education, vocational training, integrated employment (included supported employment), continuing and adult education, adult services, independent living, or community participation;

(B) is based upon the individual student's needs, taking into account the student's preferences and interests; and

(C) includes instruction, related services, community experiences, the development of employment and other post-school adult living objectives, and, when appropriate, acquisition of daily living skills and functional vocational evaluation.

20 U.S.C. § 1401(30).

Congress changed the requirements for transition services during the period between Matthew's ninth and tenth grades. For the ninth grade, the IDEA mandated statements for all children over sixteen, but for children under sixteen, allowed the IEP team discretion to include such services. 20 U.S.C. §§ 1401(19), (20)(b) (1991); 34 C.F.R. § 300.346(b)(1); Utah State Bd. of Educ. Rules IV.E.8 (May 1993). Because Matthew was only fourteen during his ninth grade, Defendants argue that transition services were not required by law and that discretionary transition services were only provided to the seriously disabled or potential drop-outs. Citing *Oregon City Sch. Dist. # 62,* the Defendants conclude that as Matthew was not seriously disabled or a potential drop out, SLCSD did not error as a matter of law in not extending transition services. 23 IDELR 688 (SEA Or.1996). *Oregon City,* however, does not support the Defendants' claim that *only* the seriously disabled or potential drop-outs can receive transition services. The decision in *Oregon City* does not seek to limit the availability of transition services, but rather explains one circumstance wherein transition services should be considered by an IEP team.

In support of her contention that the IEP team should have exercised its discretion and included transition services in Matthew's ninth grade IEP, Wiesenberg offered the testimony of Dr. Pickering at the due process hearing. Dr. Pickering gave her opinion that Matthew would benefit from transition services. (Tr. at 230). However, the hearing officer determined that Matthew's IEP did not require transition services.

For the tenth grade, the revised statute provides that the IEP for all children 14 or older "must contain a statement of the transition service needs of the child ... that focuses on the child's courses of study (such as participation in advanced-placement courses)." 20 U.S.C. § 1414(d)(1)(A)(vii)(I). Defendants argue that the transition statement in Matthew's tenth grade IEP met the requirement of section 1414(d)(1)(A)(vii). Wiesenberg, however, contends that the statement included was inadequate.

The hearing officer decided that Matthew's tenth grade transition services appeared to be "appropriate and consistent with the IDEA." (IHO Dec. at 66, attached to Pleadings Vol. at Tab 5). The law itself does not define a sufficient level of transition services; rather, the hearing officer made a discretionary determination. Because the issues raised by Wiesenberg's transition service based claims raise factual disputes, summary judgment is denied on these claims.

#### 4. Related Services

The SLCSD did not provide Matthew with a laptop computer, speech therapy, counseling, extended school year services, and necessary accommodations.[2] Accord-

---

**2.** The court will not consider the speech counseling or necessary accommodation arguments. The rulings on those related services

went in favor of Wiesenberg, (IHO Dec. at 65, attached to Pleadings Vol. at Tab 5), and Wiesenberg does not seem to challenge the

ing to Wiesenberg, these were "related services" that SLCSD was required to provide to Matthew. The IDEA defines "related service" to mean services "as may be required to assist a child with a disability to benefit from special education." 20 U.S.C. § 1401(22); *see also* 34 C.F.R. § 300.24(a) (related services defined as "other supportive services as are required to assist a child with a disability to benefit from special education").

### a. Laptop Computer

At the due process hearing, Wiesenberg offered the testimony of Dr. Pickering and Dr. Johnson–Nance, who both testified that Matthew would receive educational benefit from using a laptop. (Tr. at 210, 340–41). The hearing officer disagreed, finding that "in giving due consideration to Matt's unique needs, the testimony of Matt's experts and the District's witnesses, and the case law available in this area, the District's 9th grade IEP was not deficient in not providing assistive technology in the form of a laptop computer to Matt." (IHO Dec. at 61, attached to Pleadings Vol. at Tab 5). Clearly, there are factual issues in dispute regarding this claim.

### b. Counseling

Wiesenberg challenges the hearing officer's conclusion that the evidence is too tenuous to conclude that counseling as a related service would enable Matt to benefit from special education. (IHO Dec. at 62, attached to Pleadings Vol. at Tab 5). Defendants argue that because Matthew can benefit from his special education without counseling, SLCSD need not provide counseling as a matter of law.

Defendants misread the definition of related service. Congress uses the phrase "as may be required to assist" to define scope of relief in their brief. (Opp. Partial

related service. The use of the word "assist" does not indicate an intent to limit related services to services without which the disabled student would receive *no* educational benefit. Moreover, Defendants' narrow reading of related service is contrary to examples of such services given by Congress in the statute itself. These examples include examples of services such as "speech pathology and audiology, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, counseling services, including rehabilitation counseling." 20 U.S.C. § 1401(a)(17). Clearly, there are factual issues in dispute regarding this claim.

### c. Extended Year Services

■ Wiesenberg asserts that the SLCSD violated the IDEA by not providing extended school year ("ESY") services. The hearing officer found this request to be without merit and denied it. Utah State Rules provide for ESY services for students: "(1) who require an extended school year to remain [at] their current least restrictive environment; and/or (2)[ ] for whom attainment of their expected level of self-sufficiency and independence is unlikely, in view of their disabilities, without ESY services." Utah State Rules at IV.S.2. Wiesenberg offered expert testimony that ESY would benefit Matthew by reducing the "fatigue factor." (Tr. at 339). As the hearing officer noted, there is no evidence in the record that could lead to the inference that either Matthew will be moved to a more restrictive setting or that he will not be self-sufficient by graduation. (IHO Dec. at 64, attached to Pleadings Vol. at Tab 5). As a matter of law, Wiesenberg can not prove an IDEA violation premised upon the denial of ESY services.

Summary Judgment at 44, 48).

### C. Impartiality

Defendants also argues for summary judgment on hearing officer impartiality, even though the scope of the partial summary judgment is limited to the IDEA claims. This issue is not properly before the court.

### D. Additional Evidence

The IDEA provides that "[i]n any action ... the court ..., shall hear additional evidence at the request of a party." 20 U.S.C. § 1415(e)(2). Courts have almost uniformly held that "additional" means "supplemental." *Burlington,* 736 F.2d at 790; *Walker County School District v. Bennett,* 203 F.3d 1293, 1299 (11th cir. 2000); *but see Metropolitan Gov't of Nashville v. Cook,* 915 F.2d 232, 234 (6th Cir. 1990). The Tenth Circuit has not decided the issue. *See Murray,* 51 F.3d at 931. The district court can appropriately exclude proffered evidence, but must consider all relevant, non-cumulative and useful evidence. *Susan N. v. Wilson School Dist.,* 70 F.3d 751, 759 (3rd Cir.1995).

Wiesenberg has expressed a desire to introduce additional evidence. If this additional evidence is supplemental in nature, the court must hear it before concluding its review. However, the record is not sufficient to decide whether the requested additional evidence is supplemental in nature. Accordingly, summary judgment would be inappropriate at this time.[3] *See Doe,* 133 F.3d at 387 n. 2.

### ORDER

For the foregoing reasons, the Defendants motion for partial summary judgment of Plaintiff's IDEA claims is DE-NIED in part and GRANTED as to extended school year services.

---

**3.** Wiesenberg has not requested additional evidence to prove Matthew required ESY services. *See* (Supp. Aff. of Ribert Denton); (Aff. of Cheryl Wiesenberg Re: Discovery). Therefore, the court can grant summary judgment as to the ESY claim.