Jerry KONKEL, and Diane
Konkel, Plaintiffs,

v.

ELMBROOK SCHOOL DISTRICT,
Defendant.

No. 04C0408.

United States District Court,
E.D. Wisconsin.

Dec. 17, 2004.

Natalie Remington, Ronald Stadler, Mequon, WI, for Plaintiffs.

Daniel Chanen, Kathy Nusslock, Mary Hubacher, Milwaukee, WI, for Defendant.

## DECISION AND ORDER

ADELMAN, District Judge.

### I. BACKGROUND

Plaintiffs Jerry and Diane Konkel, on behalf of themselves and their minor son Scott, bring this action under § 1415(i)(2)(A) of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq., seeking judicial review of a decision of a Wisconsin administrative law judge ("ALJ"). Plaintiffs contest the ALJ's conclusion that during the 2002–2003 school year defendant Elmbrook School District ("Elmbrook") provided Scott with a free appropriate public education ("FAPE") as required by IDEA. Plaintiffs also contest the ALJ's conclusion that the Individualized Education Program ("IEP") that was developed for Scott pursuant to IDEA for the 2003–2004 school year was reasonably calculated to provide him with an educational benefit. Plaintiffs commenced the action in state court, and defendant timely removed it to this court based on federal question jurisdiction. *See* 28 U.S.C. § 1331.

Scott, who suffers from autism, attended second through fifth grade at an elementary school within Elmbrook. In February 2002, the parties prepared an IEP for Scott for the 2002–2003 school year, during which he attended sixth grade at the Pilgrim Park Middle School ("Pilgrim Park"). In February 2003, the parties prepared an IEP for the 2003–2004 school year, which contemplated that Scott would be in the seventh grade at Pilgrim Park. However, Scott was subsequently involved in several incidents, and in May 2003 his IEP was amended to include a Behavior Intervention Plan ("BIP"). Plaintiffs became increasingly dissatisfied with the education

that Scott was receiving at Pilgrim Park, and in July 2003, pursuant to IDEA, requested a due process hearing. In addition, plaintiffs chose not to return Scott to Pilgrim Park for seventh grade, instead arranging to educate him at home with the assistance of private therapists.

In October 2003, the ALJ held a hearing and found that Elmbrook was providing Scott with a FAPE and that it had properly prepared and implemented his IEPs. In the present action, plaintiffs challenge the ALJ's decision and seek reimbursement from Elmbrook for the costs of educating Scott at home.

Before me now is plaintiff's motion to supplement the record with additional evidence. Plaintiffs wish to present evidence regarding (1) the lack of expertise of Wisconsin ALJs; (2) how an inconsistent educational program can harm the development of an autistic child; (3) whether Elmbrook's teachers and teacher's aides were qualified to teach Scott; (4) the lack of benefit that Elmbrook was providing Scott; and (5) Scott's progress in the home-based program.

## II. STANDARD FOR RECEIVING ADDITIONAL EVIDENCE

■ IDEA provides that a court reviewing an administrative decision "shall receive the records of the administrative proceedings, shall hear additional evidence at the request of a party, and basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(B). Notwithstanding the "shall hear additional evidence" language, appellate courts have construed the statute to provide district courts with discretion to determine whether to hear such evidence. *See, e.g., Walker County Sch. Dist. v. Bennett,* 203 F.3d 1293, 1298–99 (11th Cir. 2000) (discussing circuit court decisions).[1] However, neither IDEA nor its legislative history make clear whether the statute should be construed as establishing a relaxed standard or a standard that strictly limits the parties' ability to present additional evidence. Andriy Krahmal, et al., *"Additional Evidence" Under the Individuals with Disabilities Education Act; The Need for Rigor,* 9 Tex. J. on C.L. & C.R. 201, 202 (2004). Further, in determining whether to receive additional evidence, courts have not applied a uniform standard. *Id.* (stating that "the courts have taken different, conflicting and often haphazard approaches to admitting additional evidence during the IDEA judicial review").

Probably the leading case on the issue is *Town of Burlington v. Dep't of Educ.,* 736 F.2d 773 (1st Cir.1984), *aff'd on other grounds sub nom., Burlington Sch. Comm. v. Mass. Dep't of Educ.,* 471 U.S. 359, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985), in which the court construed "additional" to mean "supplemental." *Id.* at 790. Guided by the Supreme Court's decision in *Bd. of Educ. v. Rowley,* 458 U.S. 176, 206, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982), which required courts to give "due weight" to the administrative proceedings, the First Circuit reasoned that repeating or embellishing a witness's prior administrative hearing testimony "would be entirely inconsistent with the usual meaning of 'additional.'" *Krahmal, supra,* at 210–11 (quoting *Burlington,* 736 F.2d at 790).

---

1. Such decisions have often interpreted the word "additional" to mean "supplemental" in order to avoid the seemingly mandatory language of § 1415(i)(2)(B). Another way of addressing the problem is to construe the statute as incorporating a court's general "discretion to place reasonable limits on the presentation of evidence to prevent undue delay, waste of time, or needless presentation of cumulative evidence." *M.T. Bonk Co. v. Milton Bradley Co.,* 945 F.2d 1404, 1408 (7th Cir.1991).

The court held that the administrative record should be the main source of evidence with limited supplementation, but rejected a rigid rule that would "unduly limit" the reviewing court's discretion and "disallow testimony from all who did, or could have, testified before the administrative hearing." *Burlington,* 736 F.2d at 790. Rather, the court suggested a "practicable approach," a rebuttable presumption in favor of foreclosing additional evidence. *Id.* at 791; *see also Springer by Springer v. Fairfax County School Board,* 134 F.3d 659, 667 (4th Cir.1998) (quoting *Burlington,* 736 F.2d at 790) ("[T]he exclusion of 'testimony from all who did, or could have, testified before the administrative hearing' would be 'an appropriate limit in many cases.' ").

Although courts faced with the additional evidence issue often cite *Burlington,* they have applied it in widely varying ways, and case law reveals a broad spectrum of opinions that reflect confusion about the appropriate standard. *Krahmal, supra,* at 210–16. In fact, the leading "additional evidence" case in this circuit acknowledges that the Seventh Circuit has not established a clear standard for resolving the issue. *Monticello Sch. Dist. No. 25 v. George L.,* 102 F.3d 895, 901–02 (7th Cir.1996) ("This Court has not spoken with specificity on the issue of when a district court must hear testimony at the request of a party in an IDEA proceeding, but we certainly have not mandated that a district court do so every time.").

Nevertheless, *Monticello* and other cases in this circuit endorse the notion that courts need not receive additional evidence absent a strong justification for the proponent's failure to present it at the administrative level. In *Monticello,* the court addressed the additional evidence issue in terms of the standard of judicial review of an administrative decision and stated that " 'adequate compliance with the procedures prescribed would in most cases assure much if not all of what Congress wished in the way of substantive content in an IEP.' " *Id.* (quoting *Rowley,* 458 U.S. at 206, 102 S.Ct. 3034). The court also indicated that it agreed "with the First Circuit's statement that the determination of whether to allow additional evidence under § 1415(e)(2) 'must be left to the discretion of the trial court which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial de novo.' " *Id.* (quoting *Burlington* 736 F.2d at 791). The *Monticello* court went on to affirm the district court's refusal to receive additional evidence, stating that "[t]he Parents have not asserted that any procedures under the IDEA were not followed," and that "because there were no procedural infirmaries in the administrative proceedings, there was no reason to ... allow additional evidence into the record as to the substantive aspects of the Parents' IDEA claims." *Id.* at 902; *see also Beth B. v. VanClay,* 211 F.Supp.2d 1020, 1025 (N.D.Ill.2001), *aff'd on other grounds,* 282 F.3d 493 (7th Cir.2002) (stating that the trial court must be careful not to allow supplemental evidence to change the character of the action from one of review to a trial de novo and should consider the reason the evidence was not available at the administrative hearing).

As the *Burlington* court recognized, there are important policy reasons why, in the absence of persuasive justification, courts should not receive additional evidence at the judicial review stage of an IDEA proceeding. 736 F.2d at 791. First, taking additional evidence delays the resolution of the dispute and undercuts IDEA's goal of finality. *Krahmal, supra,* at 217. As the Eleventh Circuit observed in a slightly different context, "the most effective means of ensuring disabled children receive an education tailored to meet their specific needs is to provide prompt

resolution of disputes over a child's IEP." *Cory D. ex rel. Diane D. v. Burke County Sch. Dist.*, 285 F.3d 1294, 1299 (11th Cir. 2002); *see also Springer*, 134 F.3d at 667 ("A lenient standard for additional evidence would have the consequence of making the whole IDEA process more time-consuming, as parties scrambled to use the federal court proceedings to patch up holes in their administrative case"). Second, a relaxed approach to admitting additional evidence undercuts one of the purposes of the due process hearing—developing a complete factual record. *See, e.g., Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 790 (2d Cir.2002). An open-ended additional evidence standard might create a disincentive for a party to present its strongest case, which might involve costly expert witnesses, at the hearing. *See Springer*, 134 F.3d at 667; *Burlington*, 736 F.2d at 791.

Thus, consistent with the Seventh Circuit's statements and the policy reasons recognized in *Burlington* and other cases, a court should receive additional evidence at the judicial review stage of an IDEA proceeding only if the movant provides a particularized and compelling justification for doing so. This showing should include an explanation both as to why the evidence was not presented at the administrative level and why it is probative of the issues before the court. Valid reasons for presenting supplemental evidence might include gaps in the hearing transcript owing to mechanical failure, the unavoidable absence at the hearing of an important witness, or the improper exclusion of relevant evidence by the hearing officer. *See Burlington* 736 F.2d at 790. The probative value of the proposed evidence will of course depend upon the nature of the dispute before the court. While the proponent need not provide a verbatim recitation of the supplemental evidence, it must provide the court with a synopsis sufficient to determine its relevance.

## III. APPLICATION OF STANDARD

■ Plaintiffs first wish to present evidence regarding the educational expertise of Wisconsin ALJs. Plaintiffs assert that Wisconsin's recent change from a two-tier to a one-tier system of administrative hearings has resulted in ALJs who are less knowledgeable. Plaintiffs argue that if they can establish this, I will have to review the administrative decision in the present case less deferentially. Plaintiffs' argument fails. When the Supreme Court established the "due weight" standard of review, it did not do so because of the knowledge of ALJs; rather, it derived the standard from the language of IDEA. *Rowley*, 458 U.S. at 206, 102 S.Ct. 3034 (stating that "the fact that § 1415(e) requires that the reviewing court 'receive the records of the [state] administrative proceedings' carries with it the implied requirement that due weight shall be given to these proceedings"). Moreover, under IDEA I am required to base my decision "on the preponderance of the evidence." § 1415(i)(2)(B)(iii). Thus, in reviewing the administrative decision, my focus is not on the knowledge level of Wisconsin ALJs but on the evidence in the record. Finally, the Seventh Circuit has recognized that notwithstanding its use of a one-tier system, Wisconsin's ALJs are "specialists." *Sch. Dist. of Wis. Dells v. Z.S.*, 295 F.3d 671, 673, 676 (7th Cir.2002). For all of these reasons, the request will be denied.

■ Second, plaintiffs ask to present testimony relating to the harm an inconsistent educational program can cause an autistic child. They argue that such evidence will assist the court in understanding the dispute between the parties. However, at the due process hearing, plaintiffs presented expert testimony on this point. (*See, e.g.,* Vol. IV Tr. at 781:19 (where the witness discussed the importance of telling social stories to autistic children on a con-

sistent basis over time: "It is not a one time shot that's going to teach the behavior. You review it with the child multiple times").) Plaintiffs do not describe in any detail what supplemental evidence they wish to present and provide no compelling justification for my admitting more evidence on this issue. Therefore, plaintiffs' request to present additional evidence on this point will be denied.

Third, plaintiffs wish to present evidence concerning the qualifications of Elmbrook's teachers and teachers' aides to teach autistic children. They argue that unless the court hears this evidence it will not be in a position to properly evaluate the case. Again however, plaintiffs presented expert testimony at the due process hearing that Elmbrook's personnel "were not sufficiently trained to work with Scott." (Vol. IV Tr. at 816:17–24.) Plaintiffs again do not specifically identify the evidence they wish to offer and fail to provide me with a particularized and compelling justification for hearing more evidence on the issue. Therefore, this request will also be denied.

■ Fourth, plaintiffs seek to introduce additional evidence regarding what constitutes an educational benefit and whether Elmbrook provided such a benefit to Scott. Again, plaintiffs argue that such evidence will assist the court in fully understanding the nature of the controversy. However, the issues of what constitutes an educational benefit and whether Elmbrook was providing such a benefit to Scott are the critical issues in a proceeding of this type, whether in its administrative or judicial phase. Barring unusual circumstances, there is no reason why after presenting expert testimony on the issue at the due process hearing, a party should be permitted to present more such testimony on judicial review. In the present case, during the administrative proceedings, plaintiffs presented a substantial amount of expert testimony on whether Elmbrook was providing an educational benefit to Scott, and they discussed the issue at length in their briefs. Plaintiffs do not clearly identify the evidence they now wish to present, do not explain why they did not introduce it at the due process hearing and do not provide a detailed or persuasive explanation as to why I should admit more evidence on the issue. Thus, this request will be denied.

■ Finally, plaintiffs wish to present testimony relating to Scott's educational progress in his home-based program. Because such evidence was not in existence at the time of the administrative hearing plaintiffs could not have been expected to present it to the ALJ. However, Elmbrook argues that I should exclude the evidence as irrelevant. Plaintiffs respond that such evidence is relevant because Scott's progress in his home-based program may demonstrate what his "true educational potential is," "that it is well beyond the skills he displayed while in his placement at Pilgrim Park during the 2002–2003 ' ... school year, and [that] based upon this difference, that Scott, in fact, received no educational benefit while at Pilgrim Park." (Pls.' Reply Br. at 6.)

In *Burlington*, the court contemplated that admissible additional evidence might include "evidence concerning relevant events occurring subsequent to the administrative hearing." 736 F.2d at 790; *see also R.B. v. Bartholomew Consol. Sch. Corp.*, No. 1:03–CV–0939, 2004 U.S. Dist. LEXIS 8529, at *6 (S.D.Ind. May 4, 2004) (admitting evidence of student's progress after the challenged IEP was created). As to the relevance of Scott's experience as a home-schooler, in an IDEA case a court's inquiry is twofold: first, whether the state complied with the procedures set forth in the statute, and second, whether the IEP developed pursuant to such procedures

was reasonably calculated to enable the child to receive educational benefits. *Rowley*, 458 U.S. at 206–07, 102 S.Ct. 3034. Plaintiffs do not contend that Scott's experience at home is relevant to whether Elmbrook complied with IDEA's procedures but argue that it may show that his placement at Pilgrim Park was not reasonably calculated to provide him with an educational benefit. To be relevant, evidence must have a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable that it would be without the evidence." Fed.R.Evid. 401. Although the issue before me is not whether Scott reached "his highest potential" at Pilgrim Park, *see Bd. of Educ. of Murphysboro v. Ill. Bd. of Educ.*, 41 F.3d 1162, 1167 (7th Cir.1994), or whether he did better at home than at Pilgrim Park, *see Fuhrmann v. E. Hanover Bd. of Educ.*, 993 F.2d 1031, 1037 (3d Cir.1993), I cannot conclude that his experience at home lacks any tendency to show the absence of an educational benefit at Pilgrim Park. Therefore, this request will be granted.

## IV. CONCLUSION

For the reasons stated,

**IT IS ORDERED** that plaintiffs' motion to present additional evidence is **GRANTED IN PART AND DENIED IN PART.**

**IT IS FURTHER ORDERED** that a telephonic status conference will be held on December 29, 2004 at 10:30 a.m. The court will initiate the call.