[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

----------------------------------------
No. 99-13058
----------------------------------------

D. C. Docket No. 93-14202-CV-NCR

**FILED**
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 02, 2001
THOMAS K. KAHN
CLERK

WILLIAM J. DEVINE,
TERRY DEVINE, et al.

Plaintiffs-Counter-Defendants-
Appellants,

versus

INDIAN RIVER COUNTY SCHOOL BOARD,

Defendant-Counter-Claimant-
Appellee.

------------------------------------------------------------------
Appeal from the United States District Court
for the Southern District of Florida
------------------------------------------------------------------

**(May 2, 2001)**

Before EDMONDSON, BLACK and McKAY*, Circuit Judges.

_____

* Honorable Monroe G. McKay, U.S. Circuit Judge for the Tenth Circuit, sitting by
designation.

EDMONDSON, Circuit Judge:

This case is a challenge to an Individual Education Plan ("IEP") created pursuant to the Individual with Disabilities Educational Act, 20 U.S.C. §1400 et seq. ("IDEA"). We affirm the district court's decision upholding the IEP as being reasonably calculated to confer an appropriate education.

Plaintiffs William Devine, Terry Devine and John Devine filed this action against Defendant Indian River County School Board under the IDEA seeking a Free Appropriate Personal Education ("FAPE").

John Devine is a child seriously impaired in all areas of functioning and has been classified as autistic. John and his family moved to the Indian River County School District in the fall of 1988. John enrolled in the Indian River School System and, after an assessment of his needs, was placed in a day program at the Wabasso School for Exceptional Children.

For the 1989/1990 school year, John attended Dodgertown Elementary School, where an autistic program was created by the school board. John remained at Dodgertown for the 1990/1991 and 1991/1992 school years. IEPs were developed and implemented for John by the school and with contribution from John's parents.

For the 1992/1993 school year, the school board and the parents could reach

no agreement on an appropriate IEP. Mr. Devine insisted on residential placement, preferably at the May Institute. The school board did not believe residential placement was necessary for John to receive an appropriate education. The board, however, did offer the Devine family counseling and in-home behavioral counseling as it had done in the previous years. Mr. Devine rejected the school board's offer and requested a due process hearing.

While the hearing officer ruled that the 1992/1993 IEP was not appropriate and did fail to provide John with an FAPE, the officer disagreed that John was entitled to residential placement.

Plaintiffs then filed, in the district court, a complaint seeking compensatory educational expenses (in the form of extended years of eligibility for services under the IDEA), attorney fees as the prevailing party in the due process proceeding, declaratory judgment approving residential placement of John at the May Institute and also reimbursement for the costs of John's placement at the May Institute.

The district court, after five days of live expert testimony and after reviewing the administrative record[1], concluded that the 1992/1993 IEP provided

[1]Plaintiffs argue that the district court refused to consider the administrative record and to give due weight to the findings and conclusions of the hearing officer. It, however, was within the district court's discretion to prefer live testimony over that of depositions and, in the event live testimony was not possible, to require the depositions to be read into the record. Plaintiffs' assertion that the district court ignored the administrative record is belied by the court's final order, which extensively referred to the administrative record and specifically cited testimony

John with an appropriate education and, accordingly, residential placement was not required. We affirm the district court's decision.

DISCUSSION

First, we must decide who bears the burden of proving that an existing IEP is inappropriate in an IDEA challenge. Plaintiffs urge us to adopt the standard set forth by the New Jersey Supreme Court in Lascari v. Bd. of Educ. of Ramapo, 560 A.2d 1180 (N.J. 1989). In Lascari, the New Jersey court concluded that the burden should be placed "on the school district not only when it seeks to change the IEP, but also when the parents seek the change." Id., 560 A.2d at 1188. The court reasoned that school districts are uniquely situated in assessing the adequacy of an IEP because they possess a resource of experts who are quickly able to evaluate and determine the appropriate placement for a child. See id.

In contrast, Defendants ask us to adopt the standard employed by the Fifth Circuit, which determined that the party attacking the IEP should bear the burden of showing why the IEP is not appropriate. The Fifth Circuit wrote:

given by Dr. Amy Weatherby, who did not testify before the district court.

4

We have previously held – as have the majority of federal courts that have considered the issue – that [IDEA] "creates a presumption in favor of the education placement established by [a child's] IEP, and the party attacking its term should bear the burden of showing why the educational setting established by the IEP is not appropriate.

Christopher M. v. Corpus Christi Indep. Sch. Dist., 933 F.2d 1285, 1290-91 (5th Cir. 1991)(internal citation omitted).

In addition to the Fifth Circuit, other federal courts have supported the view that the party attacking the IEP bears the burden of showing that the IEP is inappropriate. See McKenzie v. Smith, 771 F.2d 1527, 1531 (D.C. Cir. 1985); Tatro v. State of Texas, 703 F.2d 823, 830 (5th Cir. 1983), rev'd in part on other grounds, 104 S.Ct. 3371 (1984); Burger v. Murray County Sch. Dist., 612 F.Supp. 434, 437 (N.D. Ga. 1984); Bales v. Clarke, 523 F.Supp. 1366, 1370 (E.D. Va. 1981). This placement of the burden is premised on the idea that, when a child is currently learning in a program that was jointly developed by the school district and the parents, the party attacking the program should show why it is inappropriate. See Burger, 612 F.Supp. at 437; see also Lascari, 560 A.2d at 1187.

We believe the Fifth Circuit holds the better view, especially in the light of our circuit's previous recognition that great deference must be paid to the educators who develop the IEP. See JSK v. Hendry County Sch. Bd., 941 F.2d 1563, 1573 (11th Cir. 1991). In the present case, because it is the parents who are seeking to

attack a program they once deemed appropriate, the burden rests on the parents in this IEP challenge.

The remaining issue in this case is whether the 1992/1993 IEP was reasonably calculated to confer the basic floor of educational benefits.[2] Plaintiffs main argument is that John cannot generalize learned skills across environments. Plaintiffs specifically assert that John has demonstrated serious behavioral problems at home and that Defendants make no mention of an effort to address John's educational needs in the home environment.

The Supreme Court has said that a student is only entitled to some educational benefit; the benefit need not be maximized to be adequate. See Hendrick Hudson Cent. Sch. Dist. v. Rowley, 102 S.Ct. 3034, 3046, 3049 n.26 (1982). One of John's teachers, Ms. Brewer, testified that during the 1992/1993

---

[2] Plaintiffs request damages and compensatory services for the years 1988 to 1993. Plaintiffs point to no record evidence which shows that Plaintiff ever requested a due process hearing on an IEP except that of 1992/1993. And Plaintiffs must exhaust their administrative remedies by proceeding through a due process hearing to adjudicate the appropriateness of the IEPs before they can challenge those IEPs in court. See Babicz v. Sch. Bd. of Broward County, 135 F.3d 1420, 1422 (11th Cir. 1998)(litigants must first exhaust administrative remedies under section 1415(f) of the IDEA before presenting federal claims regarding the denial of publicly financed special education).

On Plaintiffs' claims for 1993 to the present, Plaintiffs are entitled to no relief. The IDEA provides that "[a] free appropriate public education is available to all children with disabilities *residing in the State.*" 20 U.S.C. §1412(a)(1)(A)(emphasis added). Because Plaintiffs are no longer residing in the state of Florida and have, since 1993, been receiving residential placement from the state of Massachusetts at no cost to Plaintiffs, Plaintiffs have no standing to assert a claim under the IDEA after the 1992/1993 school year.

school year, John made progress in 26 out of 27 education goals. The testimony of John's teachers also reflected that John was in large part uncontrollable when he first arrived at Dodgertown but that, over the school year, he reached a level where he acquired skills, which he could display across settings. John was also able to establish relationships with his peers and formed an especially close bond to one of his teachers, Ms. Thomas.

In contrast, the two experts on which Plaintiffs rely testified that John received no educational benefit during the 1992/1993 school year. Both witnesses based their determination on limited observations of John and on the word of John's parents. The district court noted that neither witness consulted John's teachers nor requested documentation underlying the IEP. The district court also directly questioned the credibility of one of these experts and deemed his testimony to be suspect.

This same expert (who is affiliated with the May Institute), when evaluating whether John had received an appropriate education, defined an appropriate education as something "more than just making measurable and adequate gains in the classroom." But this circuit has specifically held that generalization across settings is not required to show an educational benefit. "If 'meaningful gains' across settings means more than making measurable and adequate gains in the

7

classroom, they are not required by [IDEA] or <u>Rowley</u>." <u>JSK</u>, 941 F.2d at 1573.

Plaintiffs also argue that the IEP was inadequate because it failed to provide respite care for the Devine family: that is, to provide for people – other than the family – to care for John at home. Dr. Russo, testifying for Plaintiffs, opined that respite care was "absolutely important" because the "parents often have other responsibilities. That is, their sole job cannot be to be the educator or teacher of a child who needs such education. They have other children. They have other responsibilites including jobs." While respite care will no doubt benefit the Devine family, Defendants fail to show how respite care will benefit John's education. In addition, Defendants provided testimony that the school did offer at-home services in the 1992/1993 IEP, which Plaintiffs rejected.

For these reasons, we conclude that Plaintiffs have failed to show that the 1992/1993 was not reasonably calculated to confer the basic floor of educational benefits.

AFFIRMED.