[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
OCTOBER 16, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-10975
Non-Argument Calendar

_____

D. C. Docket No. 05-80291-CV-KLR

L.G. & K.G.,
on behalf of their minor child B.G.,

Plaintiff-Appellant,

versus

SCHOOL BOARD OF PALM BEACH COUNTY,
a political subdivision of the State of Florida,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(October 16, 2007)

Before TJOFLAT, CARNES and HULL, Circuit Judges.

PER CURIAM:

Plaintiffs B.G., a minor, and his parents, L.G. and K.G., appeal the district

court's grant of summary judgment for the defendant, the School Board of Palm Beach County, Florida, on their claims under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq., and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. The plaintiffs argue that the district court erred by: (1) denying their motion to supplement the record with additional facts that occurred after the plaintiffs' due process hearing; (2) giving deference to the administrative law judge's decision, which the plaintiffs contend should be given no weight; and (3) granting summary judgment for the School Board because there was a genuine issue of material fact regarding whether the School Board had provided a free appropriate public education to B.G.

B.G. is a "severely emotionally disturbed" eight-year-old boy who has been diagnosed with many conditions, including Mood Disorder Not Otherwise Specified, Impulse Control Disorder Not Otherwise Specified, Attention Deficit Hyperactivity Disorder, Bipolar Disorder, and Schizoaffective Disorder. His parents, L.G. and K.G., adopted him at birth. B.G. began exhibiting serious emotional, social, and behavioral problems at age three, and he has already been through many educational institutions and hospitals in New York and Florida during his short life. In June 2004, B.G. and his parents moved from New York to Florida, where they met with the School Board to discuss an individual education

program for B.G. After significant consideration, including a review of the individual education program prepared by B.G.'s previous school district in New York that had recommended placement in a residential facility, the School Board decided to place B.G. at Indian Ridge School, a therapeutic day school that serves the needs of severely emotionally disturbed students.

In July 2004, B.G. was hospitalized at Columbia Hospital after a violent episode at home with his parents. At the recommendation of B.G.'s treating psychologist, B.G.'s parents decided to enroll him in Sandy Pines Hospital, a residential behavioral health facility, rather than placing him at Indian Ridge as provided by the School Board's individual education program. B.G. was admitted into Sandy Pines on July 12, 2004, and discharged on October 11, 2004. His behavior at Sandy Pines was "uncontrollable," and he did not show many signs of improvement outside the classroom. After his discharge from Sandy Pines, B.G. has been hospitalized a number of times and has been in and out of two therapeutic day schools. In January 2005, he was placed at Tampa Bay Academy, a residential facility.

Pursuant to Fla. Stat. § 1003.57(1)(e), B.G.'s parents requested a due process hearing before the State of Florida, Division of Administrative Hearings, seeking reimbursement for costs incurred while B.G. attended Sandy Pines. On March 7,

3

2005, Administrative Law Judge Florence Snyder Rivas denied the plaintiffs' request for reimbursement. Judge Rivas also denied the plaintiffs' request to keep the record open in order to hear new facts regarding B.G.'s December 2004 hospitalization at the Fort Lauderdale Children's Hospital. She had confirmed with the plaintiffs at the start of the hearing that the only issue presented was the reimbursement of expenses related to B.G.'s stay at Sandy Pines, whereas the new facts related to the broader matter of whether B.G.'s individual education program should be modified to provide for residential treatment.

In the district court, the plaintiffs again sought to supplement the record with new facts that occurred after B.G.'s discharge from Sandy Pines. The district court denied the plaintiffs' request, finding that the new facts were beyond the scope of the due process hearing because they did not relate to whether the plaintiffs should be reimbursed for B.G.'s stay at Sandy Pines. The court then granted summary judgment for the School Board, concluding that the plaintiffs were not entitled to reimbursement because: (1) they failed to show that B.G.'s attendance at Indian Ridge did not provide a free appropriate public education; and (2) even if Indian Ridge did not provide a free appropriate public education, the plaintiffs could not show that Sandy Pines provided an appropriate education.

4

## I.

The plaintiffs first argue that the district court erred by denying their motion to supplement the record with the following additional evidence: (1) records regarding B.G.'s placement at Tampa Bay Academy; (2) medical records from his hospitalization at Fort Lauderdale Children's Hospital on December 1, 2004; (3) medical records from B.G.'s hospitalizations at Columbia Pavilion Hospital in January 2005; (4) plaintiffs' request to update B.G.'s individual education program and the School Board's response; (5) medical reports from Dr. Goldberg, the treating psychiatrist at Tampa Bay Academy; and (6) checks payable from B.G.'s parents to Tampa Bay Academy. The plaintiffs contend that the new facts would have given the district court a fuller understanding of B.G.'s condition at the time of the due process hearing, and that their inclusion would not change the proceedings from a review of the state administrative law judge's decision to a <u>de novo</u> trial.

"We review a district court's ruling on the admissibility of evidence for abuse of discretion, and evidentiary rulings will be overturned only if the moving party establishes that the ruling resulted in a 'substantial prejudicial effect.'" <u>Piamba Cortes v. Am. Airlines, Inc.</u>, 177 F.3d 1272, 1305 (11th Cir.1999) (citation omitted). Under an abuse of discretion standard, "we must affirm unless we at

5

least determine that the district court has made a 'clear error of judgment,' or has applied an incorrect legal standard." Id. (citation omitted).

The IDEA provides that when reviewing the decision of the state administrative law judge, the district court "shall hear additional evidence at the request of a party." 20 U.S.C. § 1415(i)(2)(C)(ii). We have said that "[a] trial court must make an independent ruling based on the preponderance of the evidence, but the Act contemplates that the source of the evidence generally will be the administrative hearing record, with some supplementation at trial." Walker County Sch. Dist. v. Bennett ex rel. Bennett, 203 F.3d 1293, 1298 (11th Cir. 2000).

"The reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing." Id. "The starting point for determining what additional evidence should be received, however, is the record of the administrative proceeding." Id. We have cautioned that the district court "must be careful not to allow [additional] evidence to change the character of the hearing from one of review to a trial de novo." Id.

"The philosophy of the [IDEA] is that plaintiffs are required to utilize the elaborate administrative scheme established by the Act before resorting to the

6

courts to challenge the actions of the local school authorities." N.B. v. Alachua County Sch. Bd., 84 F.3d 1376, 1378–79 (11th Cir. 1996) (citation omitted, alteration in original). The appropriate administrative procedure in Florida is to request a due process hearing with a state administrative law judge in the Florida Division of Administrative Hearings. 20 U.S.C. § 1415(f), (i); Fla. Stat. § 1003.57(e). If a party is aggrieved by the final decision of the state administrative law judge, then he can file a civil action challenging the decision in state or federal court. 20 U.S.C. § 1415(i)(2)(A); Fla. Stat. § 1003.57(e).

We conclude that the district court did not abuse its discretion here. First, the scope of the due process hearing was clearly limited to whether the School Board had to reimburse the plaintiffs for B.G.'s placement at Sandy Pines from July 12, 2004, to October 11, 2004. At the outset of the due process hearing, Administrative Law Judge Rivas clarified with the parties that this reimbursement issue was the only one for decision at the hearing. The additional evidence the plaintiffs sought to have admitted went beyond the scope of that issue by focusing on events that occurred after B.G. was discharged from Sandy Pines. Therefore, it is not relevant, and the district court did not abuse its discretion in excluding it.

Second, throughout the hearing, the plaintiffs repeatedly sought to keep the evidence and the issue limited to B.G.'s hospitalization at Sandy Pines. For

7

example, they objected when the School Board attempted to introduce evidence about the nature and extent of the educational and counseling services B.G. was receiving in November 2004 following his discharge from Sandy Pines. On the last day of the hearing, however, the plaintiffs had asked Judge Rivas to expand the hearing to include B.G.'s placement in Tampa Bay Academy, which had occurred after his discharge from Sandy Pines.

Judge Rivas determined that the Tampa Bay placement constituted a new case and would therefore require a new due process hearing. She informed the plaintiffs that the proper procedure to follow would be to request a new due process hearing on that issue. The district court agreed with Judge Rivas that the evidence plaintiffs sought to admit was outside the scope of the hearing and denied the plaintiffs' request to supplement the record. We agree. The plaintiffs themselves, by objecting to the School Board's post-Sandy Pines evidence, confirmed that the scope of the hearing was limited to reimbursement. Therefore, the additional evidence that the plaintiffs sought to exclude as not relevant is outside the scope of the hearing, and the district court did not abuse its discretion in excluding it.

## II.

The plaintiffs next contend that the district court erred by giving some

deference to the findings of fact in the state administrative law judge's decision, which they believe should have been given no weight. We review the district judge's deference to the state administrative law judge's findings only for abuse of discretion. See Jefferson County Bd. of Educ. v. Breen, 853 F.2d 853, 857 (11th Cir. 1988) ("The extent of deference to be given the administrative findings of fact is an issue left to the discretion of the district court."). "[T]he role of the district court is to review the administrative determinations" of the state administrative law judge. Doe v. Ala. State Dep't of Educ., 915 F.2d 651, 657 n.3 (11th Cir. 1990). "The court must consider the administrative findings of fact, but is free to accept or reject them." Id.

Having reviewed the entire record, the district court determined that Judge Rivas had "repeatedly clarified the scope of the hearing" in order to ensure that all the issues were addressed. Furthermore, the court noted that Judge Rivas "also showed an immense sensitivity to B.G.'s parents throughout the hearing . . . . Simply because she ultimately ruled against Plaintiffs' position does not prove that she was biased against B.G.'s parents." The district court acted within its discretion in granting some deference of Judge Rivas' findings of fact. See id.

## III.

The plaintiffs also contend that the district court erred in granting summary

9

judgment for the School Board because there was a genuine issue of material fact about whether the Board's individual education program, which required that B.G. be placed in Indian Ridge, provided him with a free appropriate public education.

We review the grant of a motion for summary judgment de novo. Cruz v. Publix Super Mkts., Inc., 428 F.3d 1379, 1382 (11th Cir. 2005). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The IDEA guarantees disabled students a free appropriate public education. 20 U.S.C. § 1400(d)(1)(A). A free appropriate public education is defined as "special education and related services that (A) have been provided at public expense, under public supervision and direction, and without charge; (B) meet the standards of the State educational agency; (C) include an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) are provided in conformity with [an] individualized education program." 20 U.S.C. § 1401(9).

The Supreme Court has held that an appropriate education consists of "access to specialized instruction and related services which are individually

10

designed to provide educational benefit to the [disabled] child." Board of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley, 458 U.S. 176, 201, 102 S. Ct. 3034, 3048 (1982). It does not mean "a potential-maximizing education." Id. at 197 n.21, 102 S. Ct. at 3046 n.21. Rather, the substantive question is whether a placement is "reasonably calculated to enable the child to receive educational benefits." Id. at 207, 102 S. Ct. at 3051. We have said that "appropriate education" means "making measurable and adequate gains in the classroom. If 'meaningful gains' across settings means more than making measurable and adequate gains in the classroom, they are not required" by the Act. JSK v. Hendry County Sch. Bd., 941 F.2d 1563, 1573 (11th Cir. 1991).

A central principle of the IDEA is that the education of a disabled student "will be provided where possible in regular public schools, with the child participating as much as possible in the same activities as [nondisabled] children, but [it] also provides for placement in private schools at public expense where this is not possible." Sch. Comm. of Burlington v. Dep't of Educ. of Mass., 471 U.S. 359, 369, 105 S. Ct. 1996, 2002 (1985). Thus, the school board must use the least restrictive means to educate these students; a state is forbidden from funding a placement that fails to educate a child in the least restrictive environment. 20 U.S.C. § 1412(a)(5)(A)–(B).

11

If the parents of a disabled child "enroll the child in a private elementary school or secondary school without the consent of or referral by the public agency, a court or a hearing officer may require the agency to reimburse the parents for the cost of that enrollment if the court or hearing officer finds that the agency had not made a free appropriate public education available to the child in a timely manner prior to that enrollment." 20 U.S.C. § 1412(a)(10)(C)(ii). However, "parents who unilaterally change their child's placement . . . without the consent of state or local school officials, do so at their own financial risk. If the courts ultimately determine that the IEP proposed by the school officials was appropriate, the parents would be barred from obtaining reimbursement." Sch. Comm. of Burlington, 471 U.S. at 373–74, 105 S. Ct. at 2004.

The Supreme Court has established a two-part test for reimbursement cases. First, the parents seeking reimbursement must show by a preponderance of the evidence that the school district has failed to offer a free appropriate public education to the student. Schaffer v. Weast, 546 U.S. 49, 62, 126 S. Ct. 528, 537 (2005); Sch. Comm. of Burlington, 471 U.S. at 370, 105 S. Ct. at 2002. If the parents have shown that an appropriate education was not provided, then they, as the parties seeking relief, must show by a preponderance of the evidence that their alternative private school placement was proper under the IDEA. Schaffer, 546

12

U.S. at 62, 126 S. Ct. at 537; Sch. Comm. of Burlington, 471 U.S. at 370, 105 S. Ct. at 2002.

In Devine v. Indian River County School Board, 249 F.3d 1289 (11th Cir. 2001), we affirmed the denial of a parental reimbursement claim for a severely impaired autistic student. The parents claimed that the student suffered from serious behavioral problems at home, and they decided to place him in a residential facility rather than the day school selected by the school district. Id. at 1292. We emphasized that the standard for an appropriate education is whether the student is making "measurable and adequate gains in the classroom," not whether the child's progress in a school setting carried over to the home setting. Id. at 1293. And we concluded that because testimony from the student's teachers at the day school established that he was making progress at school and meeting most of the educational goals set for him, the school district was providing him with a free appropriate public education. Id. at 1292–93.

The plaintiffs argue that there was a genuine issue of material fact regarding whether the School Board's placement of B.G. at the Indian Ridge day school provided him with a free appropriate public education. They contend that the state administrative law judge and the district court ignored testimony from numerous witnesses indicating that because of B.G.'s violent behavior at home, the only

appropriate placement for him would be at a residential facility, such as Sandy Pines. We disagree, as did the district court.

The plaintiffs first presented evidence that in early July 2004, B.G. had a violent episode at home, where he threw things, tried to smash a mirror over his mother's head, and ran out into the street in traffic. Although this behavior is alarming, we have said that a free appropriate public education consists of meaningful gains inside the classroom, and that the IDEA does not require that the student be able to generalize behaviors from the classroom to the home setting. See JSK, 941 F.2d at 1573. Therefore, this evidence of B.G.'s behavior at home does not establish that there is a genuine issue of material fact about whether he had been provided a free appropriate public education at Indian Ridge.

Next, the plaintiffs contend that B.G.'s records from Sandy Pines demonstrate that he was an uncontrollable child who was violently unstable and had to be given powerful medication, called a PRN, many times because he would not calm down. Although the evidence does show that B.G. had tantrums and displayed manipulative behavior, once Sandy Pines personnel discovered that ignoring B.G.'s behavior caused him to stop acting out, he began earning good grades and interacted well with his peers. Furthermore, Dr. Jeffrey Huttman, B.G.'s therapist at Sandy Pines, and Karen Fleming, Sandy Pines' liaison, both

14

testified that B.G. was an appropriate candidate for Indian Ridge because most of his bad behaviors occurred outside the school day. Because the plaintiffs' evidence again related to B.G.'s behavior outside the classroom, and the record shows that he was making progress inside the classroom, the plaintiffs' evidence fails to raise a genuine issue of material fact regarding whether Indian Ridge provided B.G. with a free appropriate public education.

The plaintiffs finally argue that the testimony of Dr. Suanne Mallenbaum, B.G.'s psychiatrist in New York who recommended that he be placed at Sandy Pines, demonstrates that Indian Ridge did not provide a free appropriate public education for him. However, Dr. Mallenbaum testified that she was not kept fully informed after the plaintiffs moved to Florida, had no access to B.G.'s medical records after the move to Florida, and was basing her recommendation for residential placement primarily on the difficulties that B.G. was having with his parents at home. Because a free appropriate public education means that the student is making meaningful gains in the classroom, Dr. Mallenbaum's testimony regarding B.G.'s at-home behavior does not raise a genuine issue of material fact regarding whether Indian Ridge provided B.G. with a free appropriate public education. See JSK, 941 F.2d at 1573.

Because all of the plaintiffs' evidence relates to B.G.'s behavior at home,

15

and none of it shows that he was not making progress inside the classroom, the plaintiffs failed to raise a genuine issue of material fact about whether Indian Ridge provided B.G. with a free appropriate public education. All evidence indicates that it did. See Devine, 249 F.3d at 1292–93 (denying a parental reimbursement claim for a severely impaired autistic student because the student was making progress at school, despite suffering from serious behavioral problems at home).

**AFFIRMED.**