PUBLISH

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

**FILED**
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
02/16/2000
THOMAS K. KAHN
CLERK

No. 99-10140

D. C. Docket No. 97-CV-54-HLM

WALKER COUNTY SCHOOL DISTRICT,
JEWEL CAMPBELL, et al.,

Plaintiffs-Counter-
defendants-Appellants,

versus

JENSINE BENNETT, a minor, by and through
her parents and legal guardians, John & Denise
Bennett, JOHN BENNETT, DENISE BENNETT,

Defendants-Counter-
claimants-Appellees.

Appeals from the United States District Court
for the Northern District of Georgia

**(February 16, 2000)**

Before BIRCH and HULL, Circuit Judges, and HODGES*, Senior District Judge.

*Honorable Wm. Terrell Hodges, Senior U.S. District Judge for the Middle District of Florida,
sitting by designation.

HODGES, Senior District Judge:

This appeal involves the individuals with Disabilities Education Act (the IDEA), 20 USC § 1440 et seq.[1] The court is required to interpret one of the provisions of the Act that has been the subject of attention by several other circuits, but not this one.

The stated purpose of the IDEA is to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs. 20 USC § 1400(d)(1)(A). To effectuate that purpose federal funds are made available to state and local educational entities[2] which are required through an evaluation process to identify children with disabilities[3] and to develop for each disabled child an annual individualized education program or IEP.[4] If the parents of a disabled child are

---

[1] The Act was substantially revised and reorganized in 1997 by Pub. L. 105-17, June 4, 1997, 111 Stat. 37. However, the provisions pertinent to this appeal were not changed. This opinion will therefore cite the statute in its present form. 20 USC § 1440 et seq.

[2] See 20 USC § 1411.

[3] See 20 USC § 1414.

[4] See 20 USC § 1414(d).

dissatisfied with their child's IEP, the statute requires the educational agency to afford them an impartial due process hearing.[5]

Any party aggrieved by the result of the administrative proceedings in the state system has the right, under § 1415(I)(2), to bring a civil action in the district court, and

In any action brought under this paragraph, the court - -

    (I)    shall receive the records of the administrative proceedings;

    (ii)    shall hear additional evidence at the request of a party; and

    (iii)    basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

The Walker County School District was aggrieved by the result of administrative proceedings initiated under the Act by the parents of Jensine Bennett. The Administrative Law Judge required the School District to reimburse the Bennetts for the cost of Jensine's private schooling during the 1995-96 school year. The School District then brought this action in the district court under § 1415(I)(2) of the Act seeking review and reversal of that administrative decision. Invoking the

---

[5]  See 20 USC § 1415(f).

statutory mandate that the court "shall hear additional evidence at the request of a party," the School District proposed that the district court hear a substantial volume of testimonial and documentary evidence in addition to the record of the administrative proceedings developed in the state system. The district court refused to receive most of that evidence and, acting on the existing record, proceeded to affirm the administrative decision. This appeal followed.

Two issues are presented. First is the question whether the district court erred in refusing to receive and consider the evidence the School District wished to offer in addition to the record of the administrative proceedings.[6] The second issue is whether the district court erred in its judgment on the merits affirming the decision of the Administrative Law Judge.[7]

---

[6] To the extent this issue involves a question of law - - the interpretation of the statute - - our review is de novo. E.g., United States v. Gilbert, 136 F.3d 1451 (11th Cir. 1998); Rodriguez v. J. D. Lamer, 60 F.3d 745, 747 (11th Cir. 1995); Morris v. Haran, 52 F.3d 947, 949 (11th Cir. 1995). To the extent the issue involves the district court's evidentiary rulings, i.e., application of the properly construed statute in admitting or excluding evidence, we review those rulings for abuse of discretion. Taylor v. Food World, Inc., 133 F.3d 1419, 1422 (11th Cir. 1998).

[7] To the extent the district court found, as did the ALJ, that the 1995-96 IEP developed for Jensine failed to comply with the Act, the issue presents a mixed question of law and fact subject to de novo review. JSK v. Hendry County School Board, 941 F.2d 1563, 1571 (11th Cir. 1991). The district court's specific findings of fact are reviewed for clear error. See e.g., Jefferson County Board of Education v. Breen, 853 F.2d 853, 857 (11th Cir. 1998), reh'g denied 864 F.2d 795 (11th Cir. Dec. 15, 1998).

We affirm the district court in both respects and conclude that we need to discuss only the evidentiary question as an issue of first impression in this circuit.

I

Jensine Bennett was born on September 15, 1988 and was eight years old when this suit was brought in March, 1997. She was identified as an autistic child in 1991 when she was three years old. Jensine and her parents lived at the time, and still live, in Walker County, Georgia. The Walker County School District determined that Jensine, because of her autism, was a child with a disability and was qualified for special educational services under the IDEA. An individualized educational program (IEP) was prepared and implemented for her without formal dispute during Jensine's preschool years, 1991-92 through 1994-95.

In her kindergarten class during the 1994-95 school year, Jensine sporadically engaged in self abusive acts, experienced other episodes of emotional outbursts, and lacked focus on classroom tasks. In the spring of 1995 the School District prepared a proposed IEP for Jensine with respect to the 1995-96 school year. Meetings were held in June and August, 1995, but the proposed IEP was rejected by the Bennetts because, in their view, among other things, it did not provide an extended program during the summer months, and did not afford occupational therapy services or

sufficient one-on-one classroom assistance to cope with Jensine's autistic frustration. The Bennetts thus declined the School District's 1995-96 IEP, withdrew Jensine from the District's school system, enrolled her in a private school for autistic children, and gave notice to the District that they intended to seek reimbursement of the costs of that private schooling.[8]

In July, 1996, the Bennetts requested a due process hearing under the IDEA to press their claim for reimbursement of the expense of Jensine's education during the 1995-96 school year.[9] This placed in issue whether the School District's proposed IEP for Jensine during that year was sufficient to provide her a "free appropriate public education" as required by the Act, § 1400(d)(1)(A).[10]

---

[8]  This court has recognized that reimbursement is an available remedy when the public school IEP is found to be statutorily insufficient and the private schooling chosen by the parents of a disabled child is found to be appropriate. See e.g., Jefferson County Board of Education, 853 F.2d at 857.

[9]  The ALJ and the district court found that there was no applicable period of limitations and no laches on the part of the Bennetts in asking for the due process hearing some eleven months after their rejection of the 1995-96 IEP. No issue concerning that conclusion is presented or decided on this appeal.

[10] This court has previously held, following Board of Education v. Rowley, 458 U.S. 176, 102 S.Ct. 3034, 73 L.Ed.2d 690 (1982) and Todd D. v. Andrews, 933 F.2d 1576, reh'g denied, 943 F.2d 1316 (11th Cir. 1991), that each child and his or her IEP must be examined individually in determining whether the child has been provided "a basic floor of opportunity" that affords "some" educational benefit. The outcome need not maximize the child's education; adequacy must be determined on a case by case basis in the light of the child's individual needs. Board of Education of the Hendrick Hudson Central School District, Westchester County v. Rowley, 458 U.S. 176, 198, 203, 204, n.26, 102 S.Ct. 3034, 3046, 3049 and n.26, 73 L.Ed.2d 690 (1982).

The Administrative Law Judge assigned to hear the case under Georgia's statutory scheme held a two day hearing in December, 1996. Extensive documentary evidence was presented and the testimony of both lay and expert witnesses was heard. The ALJ issued his decision in February, 1997. He found, as contended by the Bennetts, that the 1995-96 IEP prepared for Jensine by the School District did not comply with the IDEA as interpreted by the Supreme Court in <u>Rowley</u> and did not fulfill Jensine's right to a free appropriate public education. Specifically, the IEP was found to be deficient because it failed to provide (1) behavior management; (2) occupational therapy; (3) extended services for twelve months; and (4) communication aids. The Bennetts were therefore awarded the costs of Jensine's private school education for the 1995-96 school year.

II

In the district court the School District moved for an evidentiary hearing to present "additional evidence." The court required a proffer of the evidence the School District wished to present. The School District responded by listing the names of nineteen witnesses (whose testimony was variously offered through the means of personal appearance, depositions or affidavits), plus three categories of tangible or documentary evidence. The district court then reviewed each item of the proffer,

separately and individually. The court found that five of the witnesses had already testified to the same general subject matter at the administrative hearing, and that the proposed testimony of several of the remaining witnesses was already in the record in the form of their written reports or the testimony of other witnesses who had described their findings, so that, in either case, the proposed testimony before the district court would be cumulative. In two instances the court found the proffered testimony to be irrelevant. The court also found that all of the proffered witnesses who had not already testified were available at the time of the administrative hearing; that no explanation was given for not calling them at that time; and that permitting them to be called in the district court would raise the dual concerns of unfairly permitting the parties to reserve their best evidence for trial while essentially converting an administrative review proceeding into a trial de novo. Thus, with two minor exceptions, the district court concluded that the admission of any of the additional evidence in the judicial review proceedings would not only be cumulative but would undercut or unduly minimize the statutory role of the administrative process thereby resulting in an unnecessary expenditure of judicial resources. In the end, therefore, the district court excluded all of the School District's proffered evidence except for a portion of the deposition testimony of one witness and some additional documentary evidence.

8

III

Ordinarily, one expects judicial review of an administrative decision to be limited to the record before the administrative body, and for the court to be required to affirm if substantial evidence in the record supports the administrative determination. See Capistrano Unified School District v. Wartenburg, 59 F.3d 884, 891 (9th Cir. 1994). But the IDEA provision for judicial review has been described as "puzzling" (id. at 898) and "somewhat confusing." Jefferson County Board of Education v. Alabama Department of Education, 853 F.2d 853, 856 (11th Cir. 1988), because it differs from the norm in a way that produces three distinct issues: (1) How much deference, if any, should be given to the administrative decision if additional evidence may be taken and the standard to be applied is the preponderance of the evidence? (2) What standard should be applied in deciding what "additional" evidence, if any, should be admitted in the district court proceeding? And (3) What is the appropriate procedural mechanism to be implemented in the district court in bringing the case before the court for a final decision?[11]

---

[11] Both the Sixth and the Ninth Circuits have noted that a motion for summary judgment under Federal Rule of Civil Procedure 56 may not be an appropriate procedural device for triggering a district court decision because the district court in reviewing the administrative record, whether additional evidence is taken or not, must weigh and decide disputed issues of fact, an improper exercise under Rule 56. Compare Capistrano, 59 F.3d at 891-92 and Doe v. Metropolitan Nashville Public Schools, 133 F.3d 384, 387 n.2 (Th Cir. 1998). Though the point seems arcane, it could be important in its influence upon the choice of the correct standard of review on appeal. The issue is not presented by this appeal and will be left for another day.

The first of these issues was the focus of the Supreme Court's decision in <u>Board of Education v. Rowley</u>, 458 U.S. 176, 102 S.Ct. 3034 (1982), and has since received the attention of this Court in <u>Jefferson County Board of Education v. Alabama Department of Education</u>, 853 F.2d 853 (11th Cir. 1988), and <u>Doe v. Alabama Department of Education</u>, 915 F.2d 651 (11th Cir. 1990). Essentially, the law is established by <u>Rowley</u> that the administrative decision in an IDEA case is entitled to due weight and the court must be careful not to substitute its judgment for that of the state educational authorities. Still, under <u>Jefferson County Board of Education</u> and <u>Doe</u>, the extent of the deference to be given to the administrative decision is left to the sound discretion of the district court which must consider the administrative findings but is free to accept or reject them.

It is the second of these issues that must now be decided in resolving this appeal. The leading decision on point is the opinion of the First Circuit in <u>Town of Burlington v. Department of Education</u>, 736 F.2d 773, 790-791 (1st Cir. 1984), <u>aff'd</u>., 471 U.S. 359, 105 S.Ct. 1996 (1985). The Court held:

> We believe that the key to the review authorized by the Act lies in the additional evidence clause. We construe 'additional' in the ordinary sense of the word, <u>Perrin v. United States</u>, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1980), to mean supplemental. Thus construed, this clause does not authorize witnesses at trial to repeat or embellish their prior administrative hearing testimony; this would be entirely inconsistent with the usual meaning of 'additional.' We are

10

fortified in this interpretation because it structurally assists in giving due weight to the administrative proceeding, as Rowley requires.  Rowley 458 U.S. at 206, 102 S.Ct. at 3051.

\* \* \* \* \*

A trial court must make an independent ruling based on the preponderance of the evidence, but the Act contemplates that the source of the evidence generally will be the administrative hearing record, with some supplementation at trial.  The reasons for supplementation will vary; they might include gaps in the administrative transcript owing to mechanical failure, unavailability of a witness, an improper exclusion of evidence by the administrative agency, and evidence concerning relevant events occurring subsequent to the administrative hearing.  The starting point for determining what additional evidence should be received, however, is the record of the administrative proceeding.

\* \* \* \* \*

We decline to adopt the rule urged by defendants that the appropriate construction is to disallow testimony from all who did, or could have, testified before the administrative hearing.  We believe that, although an appropriate limit in many cases, a rigid rule to this effect would unduly limit a court's discretion and constrict its ability to form the independent judgment Congress expressly directed.

\* \* \* \* \*

The determination of what is 'additional' evidence must be left to the discretion of the trial court which must be careful not to allow such evidence to change the character of the hearing from one of review to a trial de novo.  A practical approach, we believe, is that an administrative hearing witness is rebuttably presumed to be foreclosed from testifying at trial.  A motion may then be made to allow such a witness to testify within specified limits stating the justification for the testimony.  In ruling on motions for witnesses to testify, a court should weigh heavily the important concerns of not allowing a party to undercut the statutory role of administrative expertise, the unfairness involved in one party's reserving its best evidence for trial, the reason the witness did not testify at the administrative hearing, and the conservation of judicial resources.

ll

The Court should look with a critical eye on a claim, such as made here, that the credibility of a witness is a central issue. The claim of credibility should not be an 'open sesame' for additional evidence. Such an approach followed by a pretrial order that identifies who may testify and limits the scope of the testimony will enable the court to avoid a trial de novo. (internal citations omitted)

We agree with this well reasoned resolution of the issue by the First Circuit and now align this court with the Seventh and Ninth Circuits in adopting the same holding.[12] See Monticello School District v. George L., 102 F.3d 895, 901 (7th Cir. 1996), and Ojai Unified School District v. Jackson, 4 F.3d 1467, 1473 and n.7 (9th Cir. 1993), cert. denied, 513 U.S. 825, 115 S.Ct. 90, 130 L.Ed.2d 41 (1994). See also Susan N. v. Wilson School District, 70 F.3d 751, 759-60 (3d Cir. 1995), and Independent School District No. 283 v. S.D., 88 F.3d 556, 560 (8th Cir. 1996), in which the Third and the Eighth Circuits take a restrictive approach to the issue without expressly adopting the rule of Town of Burlington.

The only criticism of the Town of Burlington holding, which we adopt today, comes from the Sixth Circuit in Metropolitan Government of Nashville and Davidson

---

[12] It should also be noted that the enumeration of factors given by the First Circuit in Town of Burlington as possible reasons for supplementation of the evidence is a non-exhaustive list. The availability or unavailability of discovery procedures in the state administrative system, for example, might properly influence the extent to which the district court allows discovery in the review proceedings before deciding whether to admit or refuse any proffered evidence. The district court also has broad discretion, in our view, with respect to the form in which any supplemental evidence is received, i.e., deposition transcripts or affidavits in lieu of personal appearance.

County v. Cook, 915 F.2d 232 (6th Cir. 1990). The court there declined to approve the First Circuit's definition of "additional" to mean "supplemental" evidence; but the ultimate holding in Cook left the admission or exclusion of evidence in an IDEA proceeding to the sound discretion of the district court so that the difference between the First and Sixth Circuits on this point would seem to be more semantical than substantive. See id. at 234-35.

IV

Applying our construction of the statute to the evidentiary rulings made by the district court, we have no hesitancy in concluding that the court acted well within its discretion, and for the reasons it gave, in admitting and excluding the evidence proffered to it by the School District. We also approve the procedure followed by the district court in requiring a detailed proffer from the proponent of the additional evidence so that an appropriate determination could be made concerning its admissibility under the statute as we have construed it.

Finally, on the merits, we conclude that the district court did not err in its decision that the School District is required to reimburse the Bennetts for the costs of educating Jensine at the Orange Grove Center during the 1995-96 school year.

The judgment of the district court is in all respects AFFIRMED