[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 10-12556

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 31, 2012
JOHN LEY
CLERK

D. C. Docket No. 4:09-cv-00022-CDL

G.J., L.J., AND E.J., INDIVIDUALLY AND ON BEHALF OF G.J.,

Appellants,

versus

MUSCOGEE COUNTY SCHOOL DISTRICT,

Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia

_____

(January 31, 2012)

Before DUBINA, Chief Judge, CARNES, Circuit Judge, and FORRESTER,* District Judge.

Forrester, District Judge:

---

*Honorable J. Owen Forrester, United States District Judge for the Northern District of Georgia, sitting by designation.

## I.    Procedural History

In this case, we should be called upon to determine whether the Administrative Law Judge and the district court properly evaluated Appellants' claims that the Muscogee County School District ("the school district" or "MCSD") did not comply with certain provisions of the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq*., with respect to services it was to provide to G.J., the elementary school-aged child of Appellants E.J. and L.J.[1]  Instead, as the Administrative Law Judge and the district court before us, we must first offer our dismay at the state of events which has brought us to this appeal.  Rather than working in the collaborative model anticipated by the IDEA, Appellants and their counsel have taken positions throughout the course of this litigation that have no foundation in the law and would require the school district to give up important rights granted to it under the IDEA.  The school district could not be expected to agree to such requests.  In reviewing these matters, the Administrative Law Judge and the district court have specifically commented on the difficulties that have arisen due to Appellants' positions and the distraction they have caused from the development of a beneficial program for G.J.

---

[1]Congress amended the IDEA in the Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, 118 Stat. 2647 ("IDEIA"), which took effect on July 1, 2005.

Appellants E.J. (father) and L.J. (mother) are the parents of Appellant, G.J., a child with autism and brain injuries. G.J. is non-verbal and self-abusive. G.J. was first found to be eligible for special education services under the IDEA in March 2005 after the school district performed certain evaluations. The record reveals little of what happened among the parties between March 2005 and an April 23, 2008, individualized education program ("IEP") meeting where the school district sought Appellants' consent to complete a triennial reevaluation of G.J. Due to disagreements among the parties, no agreement on consent was reached at the April 23, 2008, meeting.

On May 20, 2008, L.J. again refused to sign the consent form and noted on the form "Not approved by IEP or parents until lawyers work out guidelines. MCSD cannot evaluate [G.J.] for anything." By June 3, 2008, E.J. and L.J. were prepared to sign the consent form but only under the conditions "as explained and granted in the addendum." That "addendum" contained the following conditions:

(1) the terms, scope, and usage of the evaluation shall be as identified for the purposes of this consent as the IEP meeting concerning [G.J.], held on 4-23-08 only;

(2) the evaluation shall be conducted by Dr. Lankenau;

(3) the evaluation shall be conducted pursuant to the ethical standards of the American Psychological Association and, if different, also pursuant to the standards and ethical and rules

3

[sic] of the Georgia State Composite Board for applied licensed psychologists;

(4)     the evaluation shall include an initial meeting with the parents prior to the evaluation to discuss all aspects of the evaluation and their consent, including the identification of the time and location of the evaluation, and it shall not be considered complete until the evaluator affords the parents the opportunity at a mutually convenient time and place to meet to discuss the evaluation and its results prior to its submission to or use by the IEP team;

(5)     this consent is based upon the information provided to the parent(s) at the IEP meeting or in any prior written notice and granted in reliance upon such information and these terms. Any changes requested by the evaluator or to the evaluator or the System shall invalidate this consent and require additional notice and subsequent consent. The parents do not agree that the "Examples of Assessment Instruments" attached to the evaluation consent form is an adequate notice for the purposes of obtaining consent;

(6)     the evaluation shall be maintained as confidential and shall not be used or distributed in any personal identifying fashion by any third party, person or entity without prior notice and written consent; and

(7)     this consent is not a waiver of any rights or actions not explicitly identified, nor should any implied waiver be presumed.

*See* ALJ, Final Order, AR1-84, at 3-4. Not surprisingly, the school district refused to accede to these conditions. Since then, the parties have engaged in three years

of litigation surrounding the manner in which the issue of reevaluation was handled.

On July 21, 2008, Appellants filed a Due Process Hearing Request (Complaint) with the Office of State Administrative Hearings in Georgia. This administrative hearing has been referred to by the parties as G.J.-1 (*G.J. v. MCSD*, OSAH-DOE-SE-0902167-106-Miller). Appellants' complaint in G.J.-1 is lengthy and wide-ranging. In general terms, Appellants alleged that the school district failed to: provide proper notice under 20 U.S.C. § 1415(c)(1); comply with Hearing Procedure Rights found in 34 C.F.R. § 300.504(a)(2) and (c); timely provide records under 34 C.F.R. § 300.501(a), § 300.613 and § 300.614; permit proper parent participation; provide notice of progress and valid progress reports; implement or develop an appropriate IEP; allow access to the program and observation; allow consideration of placement; and offer an appropriate and safe placement. Appellants also alleged that the school district: violated decisions made in IEP meetings, provisions and agreements; altered and created records; was hostile to the parents; provided an illegal and void placement; and denied the parents the right to informed consent.

Appellants contended that these procedural violations formed the basis for a claim of relief because the actions impeded G.J.'s right to a "free and appropriate

public education" ("FAPE") under the IDEA. They also asserted that the school district substantively denied G.J. a free and appropriate education because of these violations. Finally, Appellants claimed that the school district denied them their hearing rights because Appellants did not have the appropriate access to documents and other materials for a hearing before the Administrative Law Judge.

Several months later, on September 25, 2008, Appellants filed a separate complaint before the Office of State Administrative Hearings, *G.J. v. MCSD*, OSAH-DOE-SE-IEE-0908379-106-Miller (G.J.-2). This complaint sought an independent educational evaluation ("IEE") at public expense and a right to have a private evaluation. The Administrative Law Judge consolidated the two proceedings and issued two Final Orders on November 19, 2008.

In *G.J.-1*, although the Administrative Law Judge recognized that Appellants alleged "numerous procedural and substantive violations of IDEA and [sought] various forms of relief, including a private residential placement at public expense, compensatory education, and attorney's fees," the judge found that Appellants were not entitled to proceed on these claims because "Defendant is no longer obligated to provide special education services to him under IDEA." *See* ALJ, Final Order, AR1-84, at 5-6. The judge continued:

> Here, the Plaintiff's parents have effectively refused to consent to the Defendant's IDEA-mandated triennial reevaluation. As a consequence of this refusal, the Plaintiff is not entitled to receive special education services from the Defendant; and, since the Defendant is not required to provide services, this Court is unable to grant any of the relief sought by the Plaintiff.

*Id.* at 6.

In *G.J.-2*, the Administrative Law Judge found that a student has a right to an independent educational evaluation (either publicly or privately funded) only when the school district has already performed an evaluation or reevaluation with which the parent disagrees. *See* ALJ, Final Order AR2-30, at 6, 8-9. Because the judge found that the parents had effectively refused to consent to the reevaluation, the judge found that the parents were not entitled to an independent educational evaluation. *Id.*

The decisions of the Administrative Law Judge were appealed to the United States District Court for the Middle District of Georgia. Before the district court, Appellants added claims under the Americans with Disabilities Act, 42 U.S.C. §§ 12131 *et seq.*, as well as Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and 42 U.S.C. § 1983. The district court held: (1) although Appellants did not "refuse" to have G.J. reevaluated to the extent that the school district would no longer be required to provide services to G.J., Appellants could not dictate the

7

terms and conditions of the reevaluation; (2) Appellants are not entitled to an "independent educational evaluation" at this time; and (3) because Appellants did not exhaust their administrative remedies, the school district's motion to dismiss Appellants' non-IDEA claims would be granted.[2]

We review questions of law, including interpretation of the IDEA, *de novo*. *See*, *e.g.*, *Walker Cnty. Sch. Dist. v. Bennett ex rel. Bennett*, 203 F.3d 1293, 1295 n.6 (11th Cir. 2000). We review a district court's determination to exclude additional evidence for abuse of discretion. *Id.* Whether the district court properly determined that the parents failed to consent to the reevaluation is a mixed question of law and fact subject to *de novo* review. *Id.* at 1295 n.7. We review specific findings of fact for clear error. *Id.*

## II.   Discussion

Under the post-2004 IDEA amendments, a student receiving special education services must be reevaluated "at least once every 3 years, unless the parent and the local educational agency agree that a reevaluation is unnecessary." 20 U.S.C. § 1414(a)(2)(B)(ii). Parental consent is required for a reevaluation. 20 U.S.C. § 1414(c)(3). "Consent" is defined as:

---

[2]The Appellants do not appeal the district court's dismissal of the non-IDEA claims and have therefore abandoned any claim that the district court erred in doing so.

(a)    The parent has been fully informed of all information relevant to the activity for which consent is sought . . .;

(b)    The parent understands and agrees in writing to the carrying out of the activity for which his or her consent is sought, and the consent describes that activity and lists the records (if any) that will be released and to whom; and

(c)(1) The parent understands that the granting of consent is voluntary on the part of the parent and may be revoked at any time.

34 C.F.R. § 300.9. "If the parent refuses to consent to the reevaluation, the [school district] may, but is not required to, pursue the reevaluation by using the consent override procedures" in the regulations. 34 C.F.R. § 300.300(c)(1)(ii); *see also Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 53-54, 126 S. Ct. 528, 532 (2005).

In *M.T.V. v. DeKalb County School District*, 446 F.3d 1153 (11th Cir. 2006), we held that when conducting a reevaluation, a school is "entitled to reevaluate [a child] by an expert of its choice." *Id.* at 1160. "The school cannot be forced to rely solely on an independent evaluation conducted at the parents' behest." *Id.* (quotation and citation omitted). "Every court to consider the IDEA's reevaluation requirements has concluded if a student's parents want him to receive special education under IDEA, they must allow the school itself to reevaluate the

9

student and they cannot force the school to rely solely on an independent evaluation." *Id.* (quotation and citation omitted).

Appellants first argue that the school district never gave them an opportunity to consent because it never informed them about what tests it intended to use, but rather gave them blank forms to sign. The record is not as bare as Appellants suggest. There is no dispute that the reevaluation was discussed at the April 23, 2008, individualized education program meeting. No agreement was reached and several days later, the school district sent the standard "Parental Consent for Evaluation" form to Appellants. The form states that G.J. was referred by the IEP team for reevaluation. It also stated that

> [i]f you have any questions about why we feel your child needs testing or want to know more details about the evaluation, please call your child's school. If you agree to have this evaluation done, you can request to know the exact time and place that it will occur. You will have a chance to discuss the results following the evaluation. You will also be invited to a meeting to discuss the findings. No changes will be made in your child's educational program until we hold the meeting. The individual evaluation may include tests in the following areas: vision, hearing, motor skills, social/emotional, achievement, speech/language or others. An explanation of these areas is included. Your parental rights are included, which show that you have certain rights regarding consent and evaluation procedures.

*See* Parental Consent for Evaluation (attaching Parents Rights in Special Education and Examples of Assessment Instruments). The form then asks the

parents to check either: "Yes, I agree for the Muscogee County School System to evaluate my child" or "No, I do not agree for the following reasons."

In this case, the parents refused to sign those forms and then provided their own lengthy "Addendum" as discussed above. Because the parameters of reevaluation had been discussed at the April 23, 2008, individualized education program meeting and examples of testing were provided in the consent form, we conclude that the parents were provided with sufficient information on which to consent. The parents, themselves, state that one of the reasons they did not sign off on the school district's consent form is that the form did not reflect the discussion the parties had during the IEP meeting. Thus, it is not so much lack of information the parents oppose, but the manner in which the evaluation was to be conducted. To be clear, the parents did not agree to the manner of reevaluation, but that is a different matter than whether they were given information about the reevaluation.

The district court found that due to the number of conditions appended, Appellants had not provided consent when they proposed the Addendum to the school district. *See* Dist. Ct. Order, R4-35-18-19. We find there is absolutely no basis upon which any party could disagree with the district court's conclusion on this issue. Appellants' conditions vitiated any rights the school district had under

11

the IDEA for the reevaluation process, such as who is to conduct the interview, the presence of the parents during the evaluation, not permitting the evaluation to be used in litigation against Appellants, and whether the parents received the information prior to the school district. We find, therefore, no error in the district court's conclusion that due to the extensive nature of the conditions demanded by the parents, the parents had refused to provide consent to the school district for the reevaluation.[3]

In contrast to the Administrative Law Judge, however, the district court found that this refusal to consent did not result in the parents relinquishing any right to services under the IDEA. *See id.* at 21. Rather, the district court held that because a reevaluation had never been ordered by either the Administrative Law Judge or a court, Appellants had not refused a reevaluation after it had been ordered. *Id.*

---

[3]G.J.'s father testified via affidavit that at some point, the parents had agreed to withdraw the conditions contained in the Addendum. *See* E.J. Aff., ¶¶ 39, 41. However, there is no indication that these attempted withdrawals of the conditions were made in writing. Furthermore, Paragraph 41 does not describe a withdrawal of all conditions. Rather, it states that the parents would agree to the reevaluation so long as the school district agreed not to use the reevaluation in litigation against the parents. This is a significant condition. Given the history of the parties' interactions, it was unlikely that the parents and the school district would be able to agree to an individualized education program after the reevaluation. The school district could not waive in advance its right to use its reevaluation in any challenge the parents made to the individualized education program proposed by the school district, particularly when the parents would retain the right to use their independent educational evaluations. We find, therefore, that the district court did not commit clear error in determining that the parents had never withdrawn their conditions to the reevaluation.

It is at this point in the litigation where the old adage "no good deed goes unpunished" comes to bear. Recognizing the degree to which the relationship between the parents and the school had disintegrated and the time with which G.J. had been without a reevaluation, the district court determined that the best course of action was for the court to "grant such relief as the court determines is appropriate," as it must, under 20 U.S.C. § 1415(i)(2)(C)(iii), and order Appellants to consent to a reevaluation. *Id.*

The district court, however, placed certain conditions on the reevaluation, including that the reevaluation could be used for any purpose permitted by the IDEA, the school district would pick the evaluator, consult with Appellants to find a mutually agreeable date, and provide relevant information to the parents. *See* Dist. Ct. Prder. R4-35-22-23. The court also provided that the evaluator could request additional tests, the results would not be shared beyond that which is contemplated by the IDEA, and the parties would receive the results of the test at the same time. *Id.* at 23. If the parents disagreed with the results of the reevaluation, the parents could seek an independent educational evaluation. *Id.* Thus, the district court attempted to move the parties toward the main goal of the IDEA which is to provide the appropriate services to the student, a goal which could be reached only by completing the reevaluation process. The district court's

13

remedy did not force the parents to relinquish their rights to services under the IDEA in order to challenge any findings of the reevaluation. It also addressed the reasonable concerns of the parents, including the right to be informed of certain aspects of the reevaluation.

Appellants disagree with the findings of the district court, arguing first that any support for the district court's order found in *M.T.V.* is not helpful because *M.T.V.* has been effectively overruled by the 2004 amendments to the IDEA which did not take effect until July 1, 2005, and therefore, did not apply to our consideration in *M.T.V.* *See* 446 F.3d at 1157 n.2. It is not clear to us that this is the case. We do recognize that the 2004 amendments set forth that the school district had the right to seek a due process hearing if parents refused to consent to an evaluation. *See Schaffer*, 546 U.S. at 53, 126 S. Ct. at 532.[4]

In any event, we do not find it necessary to determine whether the 2004 amendments abrogated *M.T.V.* because unlike the Administrative Law Judge, the district court did not find that Appellants waived entitlement to services due to the

---

[4]Appellants' argument that if the school district wanted to proceed with the reevaluation in light of the parents' refusal to consent, it was required to file its own request for a due process hearing, is a bit disingenuous in light of the manner in which the parents attempted to block the school district's efforts to take that very course of action before the Administrative Law Judge.

disagreement over consent and it is this portion of the 2004 amendments upon which Appellants focus.

There is no question that the IDEA grants "broad discretion" to the district court. *See*, *e.g.*, *Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1284 (11th Cir. 2008). We find that given the hostile circumstances here, the district court worked admirably to develop the parameters for reevaluation that would address the concerns of both the school district and the parents, as well as get the educational process for G.J. moving again. Therefore, we find no error in the manner in which the district court resolved the reevaluation issue.

We turn now to whether an independent educational evaluation should have been granted at the parents' request. Because no reevaluation had taken place due to the parents' refusal to consent, the district court determined that Appellants had no right to a publicly funded independent educational evaluation. *See* Dist. Ct. Order, R4-35-24. For the same reason, the court also found that Appellants did not have a right to a privately funded independent educational evaluation. *Id.* at 25.

Parents have a right under certain circumstances "to obtain an independent educational evaluation of the child." 20 U.S.C. § 1415(b)(1). A parent has a right to evaluation "at public expense if the parent disagrees with an evaluation

15

obtained by a public agency."  34 C.F.R. § 300.502(b)(1).  "A parent is entitled to only one independent educational evaluation at public expense each time the public agency conducts an evaluation with which the parent disagrees."  *Id.* § 300.502(b)(5).

The district court correctly determined that the statutory provisions for a publicly funded independent educational evaluation never kicked in because no reevaluation ever occurred.  The right to a publicly funded independent educational evaluation does not obtain until there is a reevaluation with which the parents disagree.

The IDEA does not specifically address when parents may obtain a privately funded independent educational evaluation.  Obviously, the IDEA does not govern the right of parents to take their child to any privately paid evaluator at any time they wish.  Rather, the IDEA regulates the manner in which such an evaluation can be used in the development of a special education program.  The IDEA provides that "[i]f the parent . . . shares with the public agency an evaluation obtained at private expense, the results of the evaluation – (1) Must be considered by the public agency, if it meets agency criteria, in any decision made with respect to the provision of FAPE to the child . . ." *Id.* § 300.502(c).

16

Appellants' contention with respect to the independent educational evaluation conducted at private expense seems really to be about whether the parents' chosen evaluators would have access to observe G.J. in the school setting. There is scant development of law on this issue. Both parties point to an administrative ruling of the Office of Special Education Programs in the United States Department of Education, *Letter to Mamas*, 42 IDELR 10 (OSEP, May 26, 2004). There, the agency commented that

> [w]hile the IDEA expects parents of children with disabilities to have an expanded role in the evaluation and placement of their children and be participants, along with school personnel, in developing, reviewing, and revising the IEPs for their children, neither the statute nor the regulations implementing the IDEA provide a general entitlement for parents of children with disabilities, or their professional representatives, to observe their children in any current classroom or proposed educational placement. The determination of who has access to classrooms may be addressed by State and/or local policy. However, we encourage school district personnel and parents to work together in ways that meet the needs of both the parents and the school, including providing opportunities for parents to observe their children's classrooms and proposed placement options. In addition, there may be circumstances in which access may need to be provided. For example, if parents invoke their right to an independent educational evaluation of their child, and the evaluation requires observing the child in the educational placement, the evaluator may need to be provided access to the placement.

*Id.* at 2. Contrary to the parties' assertions, we find no mandate either for or against access in this agency ruling. Rather, the process contemplates cooperation

17

between parents and school administrators. The district court noted that Appellants did receive permission for their experts to observe G.J. in the classroom sometime in 2007 or 2008. Their observations were included in their report which recommended the consideration of residential placement for G.J. *See* Dist. Ct. Order, R4-35-24 n.11. Further, Appellants cited on appeal to portions of Dr. Babcock's affidavit where he describes his observations of G.J. in the classroom. *See* Gray Brief, at 14-15. Thus, some observation of G.J. in the classroom setting did occur.

In crafting its remedy on reevaluation, the district court anticipated that the school district would have a reevaluation done by its evaluator and also recognized that the parents had obtained their own independent educational examinations which contained recommendations on placement. So that all information would be brought to the table, the district court ordered that the IEP team consider any information provided by G.J.'s parents, "including the reports prepared by Plaintiffs' expert." *See* Dist. Ct. Order, R4-35-23-24. The district court's order, therefore, considered observation of G.J. by Appellants' chosen evaluators.[5]

---

[5]We make no comment as to whether the parents would need the opportunity to conduct additional observation as a result of the school district's proposed educational program based on the reevaluation that later took place.

18

Appellants also complain that the district court did not hear additional evidence before ruling on the motions for summary judgment. We have discussed at length the procedure for adjudicating motions for summary judgment in the IDEA context. *See*, *e.g.*, *Loren F. ex rel. Fisher v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309 (11th Cir. 2003). Although it is often called a summary judgment proceeding, courts have more accurately described it as a judgment on the record. *Id.* at 1313. Even if facts are in dispute, courts may use the "summary judgment" process. *Id.* Nothing bars a district court from fact-finding under Federal Rule of Civil Procedure 52 in IDEA cases. *Id.* at 1313-14. The district court reviews the record of the state administrative agency and where the court does not receive any additional evidence, we stand "in the same shoes as the district court in reviewing the administrative record and may, therefore, accept the conclusions of the ALJ and district court that are supported by the record and reject those that are not." *Id.* (quotation and citation omitted).

Despite the fact that the statute says the district court "shall hear additional evidence at the request of a party," 20 U.S.C. § 1415(i)(2)(C)(ii), we have not previously read that as a mandate to take additional evidence any time a party so requests. A district court is permitted to accept additional evidence, but is not required to do so. The "IDEA specifically provides that the court may take

19

additional evidence and may fashion relief that the court deems appropriate." *School Bd. of Collier Cnty. v. K.C.*, 285 F.3d 977, 981 (11th Cir. 2002) (quotation and citations omitted). "The determination of what is 'additional' evidence must be left to the discretion of the trial court which must be careful not to allow such evidence to change the character of the hearing from one of *review* to a *trial* de novo." *Id.* (quotations and citations omitted).

We review a district court's decision to deny a motion for additional evidence for an abuse of discretion. *Walker Cnty.*, 203 F.3d at 1295 n.6. The only specific evidence Appellants assert they would have wanted to present is the affidavit of Dr. Richard Elliott. The portion of Dr. Elliott's affidavit cited by the parents is simply his "expert opinion" that the Administrative Law Judge got the issue of informed consent wrong. Consent is amply discussed in the regulations promulgated under the IDEA. It is an issue of law upon which no expert opinion is generally required. Similarly, Dr. Elliott's testimony concerning what the medical profession teaches doctors with respect to consent is simply irrelevant to what might be required under the IDEA. *See* Elliott Aff., ¶ 8 (cited by Appellants, Gray Brief, at 16). Therefore, we find no error in the district court's refusal to consider the affidavit of Dr. Elliott.

20

Now that we have determined that the district court did not err in setting forth reasonable conditions for G.J.'s reevaluation and in determining that Appellants were not entitled to either a private or publicly funded independent educational evaluation, we must consider one final argument by Appellants. Because the Administrative Law Judge determined that the parents' refusal to consent to the reevaluation meant that the parents had waived any services under the IDEA, she did not consider any of Appellants' arguments with respect to the alleged multiple procedural violations of the IDEA. Appellants raised those procedural arguments at each level of review, including before the district court. The district court determined that those issues were moot in light of the fact that the district court directed that a reevaluation take place.

Based on representations made at oral argument, we do know now that a reevaluation took place and an individualized education program was established for G.J. in June 2011. Any issues with respect to that evaluation would be handled in separate litigation. Despite this fact, Appellants do not believe that the past IDEA violations are moot because they assert that for three years, G.J. went without an adequate individualized education program and that under *Draper*, G.J. is now entitled to additional compensatory services beyond that which would be statutorily provided in accordance with a "free and appropriate public education."

21

518 F.3d at 1280 (recognizing that "compensatory education" is "appropriate relief where responsible authorities have failed to provide a handicapped student with an appropriate education" under the IDEA).

In their motion for partial summary judgment before the district court, Appellants asked that the court find that the school district had violated numerous procedural safeguards under the IDEA. Appellants argued that the school district had denied their right to informed parental consent by not fully informing them of the details of the proposed reevaluation. They also contended that the school district had improperly held IEP meetings in August 2008 and August 2009 at times that the school district was aware the parents could not attend, and compounded this error by unilaterally altering G.J.'s IEP at those meetings without the parents' consent and without seeking a hearing. Appellants averred to the district court that the school district failed to consider G.J.'s unique needs, placement and services because the district had a second attorney attend the April 2008 IEP meeting unannounced and the school district refused to consider residential placement as an alternative to school placement. Finally, Appellants argued that the school district violated its own "Notice of Procedural Safeguards" provided to Appellants when it (a) did not fully explain all of the procedures associated with the reevaluation, (b) failed to provide full records before the April

22

2008 and August 2008 IEP meetings, (c) opposed Appellants' desire to have public and private independent educational evaluations without seeking a hearing, and (d) failed to seek a hearing which resulted in Appellants' inability to confront and cross-examine witnesses.[6]

We have addressed many of the issues in our resolution of the parties' disagreements concerning the reevaluation process and whether Appellants were entitled to private or public independent educational evaluations. Thus, we need not further discuss Appellants' procedural defects regarding issues of consent to reevaluation procedures or the private/public independent educational evaluation. Because we resolved those questions against Appellants, those complaints could not form the basis of an argument that G.J. was denied a free and appropriate public education based on the school district's actions in those areas.

We also find that Appellants' argument that the school district refused to consider residential placement for G.J. to be intertwined with the reevaluation issue. The school district could not make an informed decision about residential placement until it conducted a reevaluation, a process that could not take place

---

[6]We recognize that Appellants listed many more procedural violations in their Second Amended Complaint before the Administrative Law Judge. However, because Appellants only raised certain of those violations before the district court, we focus our attention on those Appellants' argue the district court should have considered.

23

until the parents consented. We have ruled that the district court appropriately resolved the issue of consent to the reevaluation and therefore, we find no procedural defect with the fact that the school district would not consider residential placement until the reevaluation was completed.

The remaining procedural problems raised by Appellants are: (1) the scheduling of the August 2008 and August 2009 IEP meetings at times the parents could not attend, (2) not providing full records before the August 2008 IEP meeting, (3) an additional attorney from the school district attending the April 2008 IEP meeting without prior notice, and (4) failure of the school district to seek a hearing to resolve certain issues.

Not every procedural defect results in a violation of the IDEA. Rather, "[i]n evaluating whether a procedural defect has deprived a student of a FAPE, the court must consider the impact of the procedural defect, and not merely the defect *per se*." *See Weiss by Weiss v. School Bd. of Hillsborough Cnty.*, 141 F.3d 990, 994 (11th Cir. 1998) (adopting order of district court). Thus, for example, it is clear that the addition of one unannounced counsel for the school district at the April 2008 IEP meeting cannot have deprived G.J. of a free and appropriate public education. Nor can the "failure" of the school district to seek a due process hearing be said to have substantively impacted the education received by G.J. The

case was already proceeding on the basis of two due process complaints filed by the parents. Appellants have not been able to adequately explain to any tribunal why they were harmed by the school district's failure to file for a due process hearing, particularly where the school district did, in fact, attempt to file a complaint before the Administrative Law Judge and Appellants opposed the filing of that complaint.

Remaining, then, are the parents' allegations regarding the August 2008 and 2009 IEP meetings. It is important to consider the timing and context of these events in order to determine whether any impacted G.J.'s right to a free and appropriate public education. The Administrative Law Judge issued her final orders on November 19, 2008. At that time, she determined that by their refusal to consent to the reevaluation, the parents had forfeited their rights to special educational services under the IDEA. The parents appealed that decision to the district court, which issued its order on March 6, 2010.

We have previously discussed the IDEA's statutory requirements for such "interim" periods. In *CP v. Leon County School Board of Florida*, 483 F.3d 1151 (11th Cir. 2007), we held that

> Section 1415(j) provides that "during the pendency of any
> proceedings conducted pursuant to [the IDEA], unless the State or
> local agency and the parents otherwise agree, the child shall remain in

> the then-current educational placement of such child ... until all such proceedings have been completed." The Supreme Court has held that Section 1415(j) is "unequivocal," stating "plainly" that a school board *shall not* change the current educational placement unless or until it can agree on an alternative placement with the parents, or until the issue is resolved through the administrative hearing process. *Honig v. Doe*, 484 U.S. 305, 323, 108 S.Ct. 592, 604, 98 L.Ed.2d 686 (1988) (quoting 20 U.S.C. § 1415(e)(3) (now codified at 20 U.S.C. § 1415(j))).

*Id.* at 1156 (footnote omitted). These are sometimes referred to as "stay-put" provisions. Thus, while the parties' complaints were making their way through the litigation process, G.J.'s placement and IEP would not change unless the parents and the school district agreed on such a change or a change was mandated through the administrative hearing process.

As we stated above, we do know that G.J. remained in placement at the school district and was eventually reevaluated in June 2011. In none of their pleadings before the district court or our court have Appellants described in any detail what changes were allegedly made by the school district at the 2008 and 2009 IEP meetings or on what portions of the IEP the parents withdrew consent. The parents did not remove G.J. to a different educational program, nor have they articulated any efforts they have undertaken to make up for any perceived gaps in G.J.'s IEP while these appeals were pending. Thus, regardless of whether the district court correctly determined that these issues were "moot," there is no basis

26

for making a determination that any procedural failures with regard to the August 2008 and 2009 IEP meetings impacted the education received by G.J. to any substantive degree.

For all of the foregoing reasons, we **AFFIRM** the order of the district court.