[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-15170

_____

D.C. Docket No. 2:12-cv-02324-KOB

JEFFERSON COUNTY BOARD OF EDUCATION,

Plaintiff - Appellant,

versus

LOLITA S., individually and as parent, guardian, next friend and legal
representative of M.S., a minor, and M.S. in his individual capacity,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(September 11, 2014)

Before JORDAN and BENAVIDES,[*] Circuit Judges, and RYSKAMP,[**] District
Judge.

_____

[*] Honorable Fortunato P. Benavides, United States Circuit Judge for the Fifth Circuit,
sitting by designation.

[**] Honorable Kenneth L. Ryskamp, United States District Judge for the Southern District
of Florida, sitting by designation.

PER CURIAM:

The Jefferson County Board of Education, an Alabama state agency, appeals the district court's order denying its motion for summary judgment, and granting in part and denying in part Lolita S.' motion for summary judgment. After review of the record, and with the benefit of oral argument, we affirm.

**I**

Because we write only for the parties, we assume their familiarity with the extensive record in this case, and restate only those facts necessary for our decision.

Ms. S. requested a due process hearing to determine, among other things, whether the Board had failed to provide her son M.S., a student with disabilities who is eligible to receive special education services, with a free and appropriate education (FAPE), as required by the Individuals with Disabilities Education Act (the IDEA), 20 U.S.C. §§ 1400-1482. Ms. S. also sought reimbursement for an independent education evaluation (IEE) under 34 C.F.R. § 300.502(b)(1) and Ala. Admin. Code R. 290-8-9-.02(4). The Alabama hearing officer ruled in favor of the Board on the FAPE issue, and ruled in favor of Ms. S on her IEE reimbursement claim, finding that the Board waived its opposition to the reimbursement claim by choosing not to file its own due process request to defend its evaluation of the

2

child.  *See* 34 C.F.R. § 502(b)(2)(i)-(ii).  Both parties sought review in federal district court.

The district court's disposition of the parties' motions, in effect, reversed and remanded in part and affirmed in part the hearing officer's decision.  The district court agreed with the hearing officer that the Board should reimburse Ms. S. for the IEE.  The district court, however, did not agree that the Board provided M.S. with a FAPE.  Among other reasons, the district court concluded that the Individualized Education Program was not "reasonably calculated to enable M.S. to receive educational benefits" because the Board used stock goals in M.S.' Individualized Education Programs for the 2010-11 and 2011-12 school years which were not designed to meet his needs in the areas of reading and transition services.  *See Bd. of Educ. v. Rowley*, 458 U.S. 176, 207 (1982).  The district court remanded for the hearing officer to determine the appropriate amount and type of compensatory education necessary for M.S. and to determine whether the same stock goals were used in the IEPs for the area of math.  This appeal followed.

## II

Whether the 2010-11 and 2011-12 IEPs provided M.S. with a FAPE is a mixed question of law and fact subject to *de novo* review.  *See G.J. v. Muscogee Cnty. Sch. Dist.*, 668 F.3d 1258, 1263 (11th Cir. 2012).  We review the district court's specific findings of fact for clear error.  *See Jefferson Cnty. Bd. of Educ. v.*

3

*Breen*, 853 F.2d 853, 857 (11th Cir. 1988). However, "[t]he extent of deference to be given the administrative findings of fact is an issue left to the discretion of the district court." *Id.* Because the district court reviewed the administrative record without receiving any other evidence, "we stand in the same shoes as the district court in reviewing the administrative record and may, therefore, accept the conclusions of the [hearing officer] and the district court that are supported by the record and reject those that are not." *G.J.*, 668 F.3d at 1268; *see also R.L. v. Miami-Dade Cnty. Sch. Bd.*, 757 F.3d 1173, 1181 (11th Cir. 2014) (same).

### III

The IDEA provides federal assistance to states that provide a FAPE to children with disabilities. *See* 20 U.S.C. § 1412(a)(1)(A). In exchange for that assistance, IDEA requires states to develop, review, and revise IEPs that are "reasonably calculated to enable the child to receive educational benefits." *Draper v. Atlanta Indep. Sch. Sys.*, 518 F.3d 1275, 1278 (11th Cir. 2008). *See also* 20 U.S.C. § 1412(a)(4). In doing so, "the state must provide the child with only a basic floor of opportunity." *Drew P. v. Clarke Cnty. Sch. Dist.*, 877 F.2d 927, 930 (11th Cir. 1989) (quoting *Rowley*, 458 U.S. at 201). "This opportunity provides significant value to the handicapped child who, before [IDEA], might otherwise have been excluded from *any* educational opportunity." *JSK By and Through JK v. Hendry Cnty. Sch. Bd.*, 941 F.2d 1563, 1573 (11th Cir. 1991) (emphasis added). A

state satisfies this obligation if the educational benefits are "adequate," which "must be determined on a case-by-case basis in light of the child's *individual* needs." *Id.* (emphasis added).

## A

With regard to the IEP's reading goals, we agree with the district court that the goals were inadequate because they were not adapted to address M.S.' individual needs. For example, his reading skills were assessed to be at the first-grade level at the time his 2011-2012 IEP was created. The reading goal in his IEP, however, was derived from the state standard for ninth-grade students. As the district court noted, this goal was set without any evidence showing that M.S.' reading comprehension had increased from a first-grade level to a ninth-grade level during the prior school year. In addition, the Board provided no program to address the gap between the ninth-grade goal and M.S.' first-grade reading level. As the district court explained, the one program the Board "intended" for him to participate in, the STAR program, is actually an assessment, and not a substantive program intended to help students like M.S. improve their reading competency. These facts persuade us that M.S.' IEP reading goals were not individualized.

One additional fact strongly supports this conclusion. The narratives for reading, math, and personal management in M.S.' 2010-2011 IEP appeared with another child's name printed on the form, which was crossed out and replaced with

5

M.S.' name on three different pages. *See* Admin. R. at 1741-43. Subsequent IEPs had M.S.' name correctly printed, but the goals were largely the same. The school's apparent use of boilerplate IEPs, with goals far above M.S.' reading level, indicate that the reading goals of M.S.' IEPs did not provide him with any educational benefits beyond those he would have received if he never had the IEPs. It appears M.S. was treated as any other disabled student during the creation of his IEPs, and was held to same standards that any student, with or without a disability, would have been.

On appeal, the Board characterizes the district court's focus on the reading goals of M.S.' IEPs as an improper "piecemeal" review. Appellant's Br. at 31 (citing *Klein Ind. Sch. Dist. v. Hovem*, 690 F.3d 390, 397 (5th Cir. 2012); *Lenn v. Portland Sch. Comm.*, 998 F.2d 1083, 1090 (1st Cir. 1993)). We disagree.

In *Klein*, the parents of a disabled student argued that a school board, in claiming that it had provided a FAPE, could not rely on that student's academic success in areas unrelated to the student's disability. Rejecting that argument, the Fifth Circuit explained that limiting the analysis to areas related to the student's disability would improperly restrict the definition of "educational benefit . . . in terms of correcting the student's disability," and prevent proper examination of the student's "whole educational experience." 998 F.3d at 397.

6

Here, we cannot say that the district court's focus on M.S.' reading skills prevented a proper examination of his educational experience. The district court considered the IEPs' goals in relation to, among other things, M.S.' oral language skills, written expression, motivation, reading, math, and transition services. The district court did agree with the hearing officer that, with the information the Board had at the time, M.S.' IEPs were appropriate in many of these areas. The district court did disagree with the hearing officer in the area of reading. But finding that M.S. was denied a FAPE based on the assignment of ninth-grade reading goals in a boilerplate IEP, where M.S.' actual reading level was elementary, can hardly be characterized as "a one-dimensional view of an IEP." *Lenn*, 998 F.2d at 1090. *Cf. Draper*, 518 F.3d at 1289-90 (finding no reversible error in the district court's holding that a FAPE was denied to a student with dyslexia who read at a third-grade level in high school and the school's program failed to provide any improvement over three years).

The district court also did not err in finding that the postsecondary goals and transition services in M.S.' IEPs fell below the FAPE standard. The IDEA requires that "beginning not later than the first IEP in effect when the child is 16," IEPs must provide for "appropriate measurable postsecondary goals based upon age appropriate transition assessments" and "the transition services (including courses of study) needed to assist the child in reaching those goals." 20 U.S.C. §

7

1414(d)(1)(A)(i)(VIII). Here, as the district court explained, the hearing officer "suggested," but did not require, the Board to conduct transition assessments. *See* Admin. R. at 1917.

Though the 2010-2011 IEP and the 2011-2012 IEP indicate that assessments were used to determine M.S.' transition goals, *see, e.g.*, *id.* at 1761 (checked box next to "Transition Planning Assessments"), the district court found that one had not yet been done because of the hearing officer's suggestion that a vocational assessment be performed. *See id.* at 1917. The Board waited until its reply brief to ask for review of this finding on appeal, and therefore we decline to address the issue. *See United States v. Dicter*, 198 F.3d 1284, 1289 (11th Cir. 1999). The postsecondary goals and transition services in M.S.' IEP, therefore, were not created in compliance with IDEA.

We recognize that a procedural defect is not dispositive, and that we "must consider the impact of the procedural defect, and not merely the defect *per se*." *G.J.*, 668 F.3d at 1270 (citations omitted). The impact of failing to implement a vocational assessment here is similar to that which resulted from M.S.' reading goals—M.S. received the same vocational and career-based training that the rest of his peers received, without any insight or determination as to whether that would be appropriate for M.S.

We further agree with the district court that this lack of individualized planning and programming for M.S' education deprived him of a FAPE.  For example, the vague language used to describe M.S.' postsecondary goal—"student will be prepared to participate in post-secondary education"—did not match M.S.' diploma track.  M.S. was not on a track for receiving a post-secondary education, as he was "unlikely to go to college."  D.E. 35 at 48.  M.S. was instead placed on an alternate diploma track—the Alabama Occupational Diploma—which is designed to prepare students with disabilities for employment upon exiting high school.  This is another illustration of the Board's use of stock language in the planning and implementation of M.S.' IEP.

On this record, we hold that the district court did not commit reversible error in finding that M.S. was denied a FAPE with regard to postsecondary goals and transition services.

**B**

Turning to the IEE reimbursement issue, we recently recognized that "Congress has clearly evinced its intent that parents have the right to obtain an IEE at public expense."  *Phillip C. ex rel A.C. v. Jefferson Cnty. Bd. of Educ.*, 701 F.3d 691, 697 (11th Cir. 2012) (upholding the validity of 34 C.F.R. § 300.502, which requires state and local agencies to reimburse parents for IEEs).  A parent can obtain an IEE at public expense if he or she disagrees with a school board's

evaluation, unless the school board files a due process complaint to request a hearing to show that its evaluation was appropriate or the school board shows that the IEE did not meet agency criteria. *See* 34 C.F.R. § 300.502.

The hearing officer found that Ms. S. was entitled to reimbursement because the school system did not file a due process request to defend its evaluation or challenge the IEE. The district court rejected the Board's argument that Ms. S.' letter of October 13, 2011, requesting an IEE at public expense was not proper because it failed to identify a specific disagreement with the Board's evaluation. *See* D.E. 35 at 58 ("the public agency may not require the parent to provide an explanation") (quoting 34 C.F.R. § 300.502(b)(4)) (italics omitted).

Based on the plain language of the regulation, we have no basis to conclude that there was reversible error. The Board did not file a due process request, and it cannot now defend its evaluation or challenge the IEE. *See* 34 C.F.R. § 300.507(a)(2) ("The due process complaint must allege a violation that occurred not more than two years before the date the parent or public agency knew or should have known about the alleged action that forms the basis of the due process complaint").

## IV

For these reasons, we affirm.

**AFFIRMED.**

10