[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 11-14859
_____

D.C. Docket No. 2:07-cv-00756-RRA

PHILLIP C.,
ANGIE C.,
on behalf of their son A.C.,

Plaintiffs - Counter Defendants - Appellees,

versus

JEFFERSON COUNTY BOARD OF EDUCATION,

Defendant - Counter Claimant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama
_____

(November 21, 2012)

Before BARKETT and JORDAN, Circuit Judges, and HODGES,[*] District Judge.

BARKETT, Circuit Judge:

---

[*] Honorable Wm. Terrell Hodges, United States District Judge for the Middle District of Florida, sitting by designation.

The Jefferson County Board of Education (the "Board"), in the state of Alabama, challenges the district court's determination affirming the validity of a Department of Education regulation that requires state and local agencies to reimburse parents and guardians for an independent educational evaluation of their children with disabilities.  See 34 C.F.R. § 300.502(b)(1) (1999) (stating that a parent "has the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the public agency").[1]  We affirm the district court's order holding that 34 C.F.R. § 300.502 is a valid

---

[1] At issue here is the 1999 version of 34 C.F.R. § 300.502(b):

  (b) Parent right to evaluation at public expense.

  (1) A parent has the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the public agency.

  (2) If a parent requests an independent educational evaluation at public expense, the public agency must, without unnecessary delay, either—

  (i) Initiate a hearing under § 300.507 to show that its evaluation is appropriate; or

  (ii) Ensure that an independent educational evaluation is provided at public expense, unless the agency demonstrates in a hearing under § 300.507 that the evaluation obtained by the parent did not meet agency criteria.

  (3) If the public agency initiates a hearing and the final decision is that the agency's evaluation is appropriate, the parent still has the right to an independent educational evaluation, but not at public expense.

  34 C.F.R. § 300.502(b) was amended in October 2006 to its current version, which essentially maintains the language of the 1999 version, while adding that a "parent is entitled to only one independent educational evaluation at public expense each time the public agency conducts an evaluation with which the parent disagrees."  34 C.F.R. § 300.502(b)(5) (2006).

2

regulation requiring the Board to reimburse Philip and Angie C. for the independent educational evaluation of their child, A.C.

## Background

The Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400-1482, was passed "to ensure that all children with disabilities have available to them a free appropriate public education" and that "the rights of children with disabilities and parents of such children are protected." Id. § 1400(d)(1)(A)-(B). In exchange for federal funding, the IDEA requires a state to provide special education tailored to each disabled child's needs "at public expense," id. § 1401(9)(A), and "at no cost to parents," id. § 1401(29). "[T]he basis for the handicapped child's entitlement to an individualized and appropriate education" is the individualized educational program ("IEP"), Doe v. Ala. State Dep't of Educ., 915 F.2d 651, 654 (11th Cir. 1990), that a school system must "design[] . . . to meet the unique needs of [each] child with a disability." Winkelman v. Parma City Sch. Dist., 550 U.S. 516, 524 (2007) (internal quotations omitted).

The IDEA established at its "core" a "cooperative process . . . between parents and schools" to jointly design the IEP. Schaffer ex rel. Schaffer v. Weast, 546 U.S. 49, 53 (2005). Congress "protect[ed] the informed involvement of parents in the development of an education for their child" by requiring states to

3

provide parents numerous procedural safeguards.  Winkelman, 550 U.S. at 524.[2]

In particular, the IDEA requires that state and local agencies

> shall establish and maintain procedures . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards . . . . [that] shall include . . . [a]n opportunity for the parents of a child with a disability . . . to obtain an independent educational evaluation ["IEE"] of the child.

20 U.S.C. § 1415(a)-(b) (2005).  Since the inception of the IDEA in 1975, the Secretary of Education has promulgated the regulations at issue in this case specifying that an IEE obtained by a parent, subject to certain conditions, will be "at public expense."  34 C.F.R. § 300.502(b)(1); see also 45 C.F.R. § 121a.503(b) (1977).  Correspondingly, Alabama adopted state regulations that mirrored the requirements of 34 C.F.R. § 300.502 for agencies to publicly finance a parent's IEE.  Ala. Admin. Code. R. 290-8-9-.02(4).

In 2002, the Board initially evaluated A.C. and determined that he was eligible for special education services and in 2005, the Board re-evaluated A.C. to assess his current level of functioning in order to plan his educational program. Philip and Angie C. disagreed with the Board's assessments and obtained an IEE of A.C. from Mitchell's Place, a private facility.  Notwithstanding the federal and

---

[2] For example, under the IDEA, parents must be members of the team of individuals designing a student's IEP, 20 U.S.C. § 1414(d)(1)(B)(i); revisions of the IEP must consider the concerns of parents, id. § 1414(d)(3)(A)(ii); the IEP team must revise the IEP when appropriate to address certain information provided by the parents, id. § 1414(d)(4)(A)(ii)(III); and states must "ensure that the parents of [a] child with a disability are members of any group that makes decisions on the educational placement of their child," id. § 1414(e).

Alabama regulations requiring reimbursement, the Board refused to reimburse the parents for the IEE. The parents, in accordance with the statute, requested a due process hearing before a state of Alabama Hearing Officer to challenge the Board's refusal.[3] The Hearing Officer determined that the Board was obligated to pay for the IEE and the parents were entitled to reimbursement, but the Board continued to refuse. The parents then filed a complaint in district court to enforce the Hearing Officer's ruling and to seek attorney's fees. In response, the Board counterclaimed, appealing the administrative decision and filing a motion for summary judgment. The district court denied the Board's motion for summary judgment and affirmed the Hearing Officer's determination that the parents were entitled to reimbursement.

The Board appeals the district court order, raising the same three claims that the district court rejected. First, the Board contends that 34 C.F.R. § 300.502 exceeds the scope of the IDEA because the IDEA did not specify that state and local agencies must finance a parent's IEE. Second, the Board argues that regardless of whether 34 C.F.R. § 300.502 is valid, the due process Hearing

---

[3] If parents of a disabled child are not satisfied with a proposed IEP or "any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child," 20 U.S.C. § 1415(b)(6)(A), the IDEA provides parents a right to "an impartial due process hearing" before the state or local educational agency, id. § 1415(f)(1)(A). In the event of an adverse outcome at the hearing level, the parents may bring a civil action in federal district court or a state court of competent jurisdiction. Id. § 1415(i)(2).

5

Officer did not have jurisdiction to order reimbursement because the parents' complaint was not related to the deprivation of a free appropriate public evaluation. Lastly, the Board argues that even assuming that 34 C.F.R. § 300.502 is valid, the IEE here does not qualify for reimbursement.

## Discussion

The Board's primary argument is that 34 C.F.R. § 300.502 must be invalidated as exceeding the Congressional authority granted to the Secretary of Education because the IDEA does not expressly state that parents are to be reimbursed for the cost of an IEE, see 20 U.S.C. § 1415(b)(1), and because, by requiring state and local agencies to "establish and maintain procedures . . . to ensure . . . procedural safeguards," Congress implicitly delegated to the states the right to decide whether to reimburse parents for the cost of an IEE, see id. § 1415(a). Based on the language and structure of the statute, we find no merit to these contentions.

The regulation at issue here is valid so long as public financing of a parent's IEE is consistent with the intent of Congress in enacting the IDEA. To assess Congressional intent, we first look to the language of the statute. Barnhart v. Sigmon Coal Co., 534 U.S. 438, 450 (2002).[4] If we, "ascertain[] that Congress had

---

[4] "To the extent this issue involves the interpretation of [the IDEA], it is a question of law which we review de novo." CP v. Leon Cnty. Sch. Bd. Fla., 483 F.3d 1151, 1156 (11th Cir. 2007).

an intention on the precise question at issue, that intention is the law and must be given effect." Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843 n.9 (1984).

As the Board notes, 20 U.S.C. § 1415(b) does not expressly state that agencies must pay for a parent's IEE. See 20 U.S.C. § 1415(b) (stating only that a parent must "have an opportunity . . . to obtain an [IEE] of the child"). However, another section of the IDEA, 20 U.S.C. § 1406(b)(2), expressly requires the Secretary of Education to preserve any IDEA regulation that existed as of July 20, 1983 and provided protection for children:

> The Secretary may not implement, or publish in final form, any regulation prescribed pursuant to this chapter that . . . procedurally or substantively lessens the protections provided to children with disabilities under this chapter, as embodied in regulations in effect on July 20, 1983 (particularly as such protections related to parental consent to initial evaluation or initial placement in special education, least restrictive environment, related services, timelines, attendance of evaluation personnel at [IEP] meetings, or qualifications of personnel),  except to the extent that such regulation reflects the clear and unequivocal intent of Congress in legislation.

Id. § 1406(b)(2).  One of the regulations in effect on July 20, 1983 expressly provided to parents "the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the public agency."[5]

---

[5] The relevant 1983 regulation states:

By enacting 20 U.S.C. § 1406(b), Congress sought to "reaffirm support for the program and its existing regulations," which included a parent's right to an IEE at public expense.  129 Cong. Rec. 33,316 (1983) (statement of Rep. Biaggi); see also H.R. Rep. No. 98-410, at 21 (Oct. 6, 1983) ("[T]he current regulations which govern programs under [the IDEA] have received the strong support of Congress.").  Significantly, this reaffirmation was in response to proposed regulations that, in part, would have significantly curtailed a parent's right to a publicly financed IEE by requiring public reimbursement "only where a hearing or reviewing officer determines that such an evaluation is necessary to resolve the issues in dispute in a hearing or review."  Assistance to States for Education of Handicapped Children, 47 Fed. Reg. 33836-01, 33841 (proposed Aug. 4, 1982) (emphasis added).  Congress "remain[ed] strongly opposed to any attempts to alter current regulatory requirements which would result in diminished rights and protections for handicapped children under the [IDEA]."  H.R. Rep. No. 98-410, at 21.  It is clear that Congress enacted 20 U.S.C. § 1406(b) to ensure that the

---

> The parents of a handicapped child have the right under this part to obtain an independent educational evaluation of the child . . . . A parent has the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the public agency. However, the public agency may initiate a hearing under 300.506 of this subpart to show that its evaluation is appropriate. If the final decision is that the evaluation is appropriate, the parent still has the right to an independent educational evaluation, but not at public expense.

34 C.F.R. § 300.503 (1983).

8

"Secretary cannot propose any regulations which . . . have the direct or indirect effect of weakening the protections for handicapped children under existing law and regulation." 129 Cong. Rec. 33,316 (1983) (statement of Rep. Biaggi).[6]

Moreover, subsequent to 1983, Congress reauthorized the IDEA in 1990, 1997, and 2004 without altering a parent's right to a publicly financed IEE.[7] Under the re-enactment doctrine, "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." Lorillard v. Pons, 434 U.S. 575, 580 (1978). This doctrine is particularly applicable here, where a parent's right to a publicly financed IEE has endured since the Department of Education first implemented the IDEA. See United States v. Baxter Int'l, 345 F.3d 866, 887 (11th Cir. 2003).[8] Accordingly, Congress has clearly evinced its intent that parents have the right to obtain an IEE at public expense. See 34 C.F.R. § 300.502.

---

[6] We reject the Board's argument that the parenthetical beginning with word "particularly" in 20 U.S.C. § 1406(b)(2) calls for a different result. "Particularly" is a word of emphasis, not limitation.

[7] See Education of the Handicapped Act Amendments of 1990, Pub. L. No. 101–476, 104 Stat. 1103 (1990); Individuals with Disabilities Education Act Amendments of 1997, Pub. L. No. 105–17, 111 Stat. 37 (1997); Individuals with Disabilities Education Improvement Act of 2004, Pub. L. No. 108-446, 118 Stat. 2647 (2004).

[8] The Supreme Court similarly has applied the reenactment doctrine to uphold the administrative interpretation that a court's broad authority to grant "appropriate" relief under the IDEA requires states to reimburse parents for the cost of private special education when a school district fails to provide a free and appropriate public education. Forest Grove Sch. Dist. v. TA, 557 U.S. 230, 239-40 (2009). The Court stated that, based on the reenactment doctrine, it would continue to

9

Even if 20 U.S.C. § 1406(b)(2) had not been passed, we find clear Congressional intent for reimbursement based on the statutory scheme of the IDEA. Parents already have the right, separate from the IDEA, to spend their own funds to obtain an IEE of their children. See G.J. v. Muscogee Cnty. Sch. Dist., 688 F.3d 1258, 1266 (11th Cir. 2012) ("Obviously, the IDEA does not govern the right of parents to take their child to any privately paid evaluator at any time they wish."). We cannot conclude that Congress extended to parents the "opportunity . . . to obtain an independent educational evaluation" at their own expense merely to secure for parents what they already could obtain without the statute. See 20 U.S.C. § 1415(b)(1); see also Clinton v. City of New York, 524 U.S. 417, 429 (1998) (rejecting a statutory interpretation resulting in an "absurd and unjust result which Congress could not have intended"). A practical interpretation of 20 U.S.C. § 1415(b)(1) is that Congress intended for state and local agencies to provide to parents the actual benefit of paying for an IEE under appropriate circumstances.

Indeed, the Supreme Court has recognized that states must reimburse parents for the cost of an IEE in order to ensure that parents can exercise their right to an independent expert opinion, which is an essential procedural safeguard.

> School districts have a natural advantage in information and expertise, but Congress addressed this when it obliged schools to safeguard the

read the IDEA to require such reimbursement unless amendments to the IDEA present "a clear expression . . . of Congress' intent to repeal some portion of that provision." Id. at 240.

> procedural rights of parents and to share information with them. . . . [Parents] have the right to an independent educational evaluation of the[ir] child. The regulations clarify this entitlement by providing that a parent has the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the public agency. IDEA thus ensures parents access to an expert who can evaluate all the materials that the school must make available, and who can give an independent opinion. They are not left to challenge the government without a realistic opportunity to access the necessary evidence, or without an expert with the firepower to match the opposition.

Schaffer, 546 U.S. at 60-61 (addressing the burden of proof in an administrative hearing challenging an IEP) (internal quotations and citations omitted).

The right to a publicly financed IEE guarantees meaningful participation throughout the development of the IEP. See generally id. at 53-54; see also Honig v. Doe, 484 U.S. 305, 311 (1988) ("Congress repeatedly emphasized . . . the necessity of parental participation in both the development of the IEP and any subsequent assessments of its effectiveness."). Without public financing of an IEE, a class of parents would be unable to afford an IEE and their children would not receive, as the IDEA intended, "a free and appropriate public education" as the result of a cooperative process that protects the rights of parents. There is "nothing in the statute to indicate that when Congress required States to provide adequate instruction to a child 'at no cost to parents,' it intended that only some parents would be able to enforce that mandate." Winkelman, 550 U.S. at 533.

11

Finally, even if some ambiguity existed within the statute regarding reimbursement, the Department of Education's determination that parents are entitled to public reimbursement, 34 C.F.R. § 300.502, is entitled to deference because the regulation is not "arbitrary, capricious, or manifestly contrary to the statute." Morgan Stanley Capital Grp. Inc. v. Pub. Util. Dist. No. 1, 554 U.S. 527, 558 (2008) (citing Chevron, 467 U.S. at 844). For all of the reasons discussed above, the Secretary of Education must be deemed to have based its interpretation of the IDEA "on a permissible construction of the statute." See Chevron, 467 U.S. at 843-44 ("[A] court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency.").[9]

In short, the Secretary of Education did not exceed its authority in promulgating 34 C.F.R. § 300.502, providing parents the right to a publicly financed independent educational evaluation, and the district court did not err in

---

[9] We reject as meritless the Board's argument that, based on 20 U.S.C. § 1415(a), Congress vested only state and local agencies with the right to require procedural safeguards such as public reimbursement for a parent's cost of an IEE. See 20 U.S.C. § 1415(a) ("[The] State educational agency, State agency, or local educational agency . . . shall establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards."). Rather than limiting the authority of the Secretary of Education to provide protections, 20 U.S.C. § 1415(a) directs state and local agencies to enact sufficient guidelines so that those agencies will in fact protect the rights of parents and children under the IDEA. We also reject the Board's argument that the due process Hearing Officer did not have jurisdiction to hear the parents' claim for reimbursement and that the parents' independent educational evaluation did not qualify for reimbursement under the requirements of 34 C.F.R. § 300.502.

12

requiring the Board to reimburse Philip and Angie C. for the IEE that they obtained for their child.

**AFFIRMED.**